680 So.2d 69 (1996)
Jeffrey A. CAIN
v.
AQUARIUS BUILDERS, INC.
No. 96-CA-66.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 1996.
Rehearing Denied October 17, 1996.
*71 J. Paul Demarest, Angela C. Imbornone, Michelle R. Demarest, Favret, Demarest, Russo & Lutkewitte, New Orleans, for Plaintiff/Appellee, Jeffrey A. Cain.
Denis Paul Juge, Mayra Leyva, Juge, Napolitano, Leyva & Guilbeau, Metairie, for Defendants/Appellants, Aquarius Builders, Inc.
Before GAUDIN, BOWES, and WICKER, JJ.
BOWES, Judge.
Defendants, Aquarius Builders, Inc., and Louisiana Workers' Compensation Corporation, appeal from a judgment finding that the plaintiff is entitled to further medical benefits under the Louisiana Workers' Compensation Statutes and also finding that they were arbitrary and capricious in their failure to pay same.

PROCEDURAL HISTORY
Jeffrey Cain was injured on August 20, 1993 when he fell off a roof while in the course and scope of his employment with defendant. He collected medical benefits and temporary total disability until February 2, 1994, when he was released to work by his treating physician.
Plaintiff filed a disputed claim for compensation on February 18, 1994. He supplemented his claim with an amended petition to claim data form and disputed claim for compensation form, which the trial court ordered filed on August 30, 1994. In this amended petition, plaintiff also requested authorization to select a new treating physician. On October 11, 1994, plaintiff filed a request for independent medical examination with the Office of Workers' Compensation. The request was denied by the Office on October 20, 1994. Pursuant to plaintiff's request to change treating physician, a hearing was held on January 23, 1995. Judgment was rendered on February 22, 1996 denying the plaintiff's request. Trial on the merits was had on August 2, 1995. The trial court rendered judgment on September 6, 1995 awarding medical benefits and finding that the defendant was arbitrary and capricious in its failure to pay same. On the court's own motion, the judgment was amended on September 8, 1995 to assess penalties of *72 $2,000.00 for defendant's arbitrary and capricious failure to pay. Defendants appeal.

FACTS
The following facts were stipulated at trial:
1. That claimant, Jeffrey Cain, sustained an injury to his left shoulder on August 20, 1993 while in the course and scope of [h]is employment with Aquarius Builders, Inc.
2. That claimant was paid a total of $2,555.31 in temporary total disability benefits through February 2, 1994 and [benefits] were terminated based on his release to return to work by Dr. Rozas.
3. That medical expenses of $4,649.57 were paid to or on behalf of claimant.
The testimony regarding Mr. Cain's injury which was presented at trial is as follows:
Jeffery Cain testified that he fell off a roof and hurt his left shoulder in August of 1993. The defendant employer sent him to Dr. Calhoun, who referred plaintiff to Dr. Earl Rozas, an orthopaedist. Plaintiff was treated by Dr. Rozas, who performed surgery on that shoulder. Dr. Rozas released him to work in February of 1994; however, at that time he was still complaining of pain in his shoulder. Cain testified that when he told Dr. Rozas that he was in still in pain, Dr. Rozas told him that there was no further treatment available and that Cain should learn to be right handed.
Cain further testified that, because Dr. Rozas could offer no further relief, he went to see Dr. George Murphy, an orthopedist, who recommended arthroscopic surgery.
Cain also testified that subsequent to his first visit with Dr. Murphy, he had sustained a whiplash injury in an automobile accident when his car was hit in the rear. Cain testified that he had recovered fully from the accident and, at the time of trial, suffered from the same kind of pain he had suffered from prior to the automobile accident.
At the time of trial, Cain was employed because he said he needed to make a living. He has continued to work for the two year period prior to trial despite his continued complaints of pain. He testified that, at the time of trial, his shoulder was still very painful, and that if he had worked hard during the day, he would suffer an extremely painful night. Cain further testified that although Dr. Murphy had prescribed pain medication, he was unable to take it while working because it was a narcotic which made him sleepy.
Dr. Rozas testified by deposition that he first saw Cain on September 15, 1993. At that time he observed that Cain had some light swelling of left shoulder, with tenderness greatest around trapezius muscles and a painful range of motion in all directions. An x-ray of Cain's shoulder revealed a fracture through the distal portion of the clavicle without any displacement. As a result, Dr. Rozas diagnosed a fracture and contusion, he prescribed an arm sling, analgesics and muscle relaxants, and he placed Cain on no-work status.
Dr. Rozas next saw Cain two weeks later on September 21, 1993. X-rays showed an essentially healed fracture of the distal clavicle. Dr. Rozas prescribed a decreased use of the arm sling and physical therapy.
Cain's next visit to Dr. Rozas was on October 12, 1993. At that time, Cain complained of pain and a decreased range of motion. Because Cain had only attended two physical therapy sessions, Dr. Rozas discussed the importance of physical therapy.
Cain returned to Dr. Rozas on October 27, 1993, with continued complaints of pain. At that time, Cain had been actively participating in the physical therapy prescribed by Dr. Rozas. Rotation of the shoulder revealed crunching, grating and cracking of the AV joint. X-rays revealed hypertrophic (some excessive) bone formation in the form of bone spikes protruding into the AV space. Dr. Rozas also observed a torn cartilage and a torn meniscus, which had occurred at the time of the injury. These same symptoms were present on Cain's next visit on November 17, 1993.
On November 26, 1993, Dr. Rozas performed a "Mumford" surgery on Cain's shoulder. This surgery involves excising the distal half inch of the collarbone and removal of the torn cartilage. Cain suffered no post operative problems.
*73 Dr. Rozas saw Cain eight times from the date of surgery until February 23, 1994. During that time period, Cain regained full range of motion of the injured shoulder but Cain continued to complain of pain. On the February 2, 1994, Dr. Rozas determined that Cain could return to work and work through his post-operative pain and discomfort so he released Cain to work on February 3, 1994. Dr. Rozas next examined Cain on February 23, 1994, at which time he discharged him from treatment.
Cain sought treatment from Dr. Rozas twice more, on July 26 and August 31, 1994 and he complained of continual pain; however, Dr. Rozas could find no objective findings. He told Cain to continue working. At trial, Dr. Rozas testified that he does not feel that Cain is insincere in his complaints of pain, but he did think that Cain was able to continue working with the pain.
On cross-examination, and in response to Dr. Murphy's diagnosis, discussed, infra, Dr. Rozas testified that cartilage in Cain's shoulder was removed during the Mumford surgery, so that Cain could not have had torn cartilage in his shoulder. However, he could be suffering from impingement syndrome,[1] which was not uncommon with Cain's type of injury. Dr. Rozas testified that he, personally, would need some stronger findings before he performed surgery; however, surgery was not contraindicated in this case. Ultimately he would defer to Dr. Murphy's findings.
Dr. George Murphy, an orthopaedist, testified by deposition that he first examined Cain on February 5, 1995. His initial examination revealed a scar over the distal clavicle area, pain on abduction and rotation, and crepitation of motion. It was his opinion that Cain might be suffering either from a torn cartilage or from impingement syndrome. He ordered that an MRI be performed. In his deposition, Dr. Murphy stated that the cartilage at issue was not the same as the cartilage that had been removed by Dr. Rozas during the Mumford surgery.
Dr. Murphy next saw Cain on February 9, 1995 for an unrelated neck injury (as a result of the auto accident).
Dr. Murphy again saw Cain on June 29, 1995. At that time, Cain reported that he was still having difficulty with his shoulder, including pain and a cracking sensation. Dr. Murphy observed considerable crepitation which was painful. An examination of the MRI did not show anything. Accordingly, Dr. Murphy recommended the arthroscopic surgery to diagnose and correct the problem. In his deposition, Dr. Murphy stated that there were some types of shoulder injuries, rotator cuff tears, which would not be detected by an MRI.
At trial, Dr. Murphy testified that it was not unusual for impingement syndrome to occur with the type of injury sustained by Cain. He further opined that Cain's problems with his shoulder are a result of the work-related injury Cain sustained when he fell off the roof.
The defendant also offered, via depositions, the testimony of Dr. Daniel Talbot and Dr. Barry Bordonaro. Dr. Talbot, a general surgeon with a subspecialty in industrial medicine, performed a pre-employment physical on plaintiff on June 29, 1994. His examination was within normal limits; he observed some stiffness on elevation of left arm above head which he interpreted as residual stiffness from surgery. However, Dr. Talbot declared Cain employable.
Dr. Bordonaro, a general practitioner, treated plaintiff for the injury sustained in the car accident. He stated that the car accident caused plaintiff to have neck pain and that the accident may or may not have aggravated Cain's shoulder condition.

AMENDED JUDGMENT
The record reflects that the trial judge originally rendered judgment on September 6, 1995 in which she ruled that the medical treatment and arthroscopic procedure recommended by Dr. Murphy was reasonable and *74 necessary and in which she ordered defendants to pay for those treatments and procedures. The trial judge also ruled that defendants were arbitrary and capricious in their failure to pay for these treatments and procedures.
The trial court rendered a second amended judgment on September 8, 1995 which contains the identical rulings set forth in the September 6th judgment, and then adds that the defendants are assessed a penalty of two thousand dollars and attorney fees of two thousand dollars.
La.C.C.P. art. 1951 provides that:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraselogy of the judgment, but not the substance; or
(2) To correct errors of calculation.
Thus, a judgment may be amended by a trial court where the judgment takes nothing away from or adds nothing to the original judgment. Villaume v. Villaume, 363 So.2d 448 (La.1978); Hebert v. Melco Steel, Inc., 552 So.2d 1326 (La.App. 5 Cir. 1989).
As a general rule, a final judgment is not subject to substantive amendment by the trial judge on his own motion or motion of any party. In such an event, the proper recourse is a timely application for new trial or a timely appeal. Villaume, supra; Hebert, supra. The district court may grant a limited or unlimited new trial, but until it does, it cannot modify its previous judgment as to substance. Hebert, supra.
In this case, the second judgment rendered by the trial court on September 8, 1995 grants to the plaintiff additional relief in the form of attorney fees and penalties. Since this second judgment grants to plaintiff additional relief, this obviously alters the substance of first judgment in violation of the prohibition contained in La.C.C.P. art. 1951, supra, and renders this second judgment null and void. ITT Residential Capital Corp. v. Cheuk, 94-744 (La.App. 5 Cir. 5/30/95), 656 So.2d 747, writ denied, 95-1634 (La. 10/6/95), 661 So.2d 465.
The usual remedy applied by an appellate court which finds an amendment as to substance in a judgment is to vacate the amending judgment and reinstate the original judgment. Hebert, supra. Accordingly, we vacate and annul the amended judgment of September 8, 1995 and reinstate the judgment of September 6, 1995.

MEDICAL BENEFITS
Appellants first allege that the trial court was manifestly erroneous in finding that expenses for the treatment provided by Dr. Murphy was reasonably necessary and holding appellants were liable for the payment of this treatment.
Initially, appellant argues that the plaintiff failed to prove that the medical treatment was necessary to relieve a work-related injury. Appellant argues that "Claimant failed to establish that the treatment of Dr. Murphy was not due to the aggravation of his pre-existing injury or a new injury caused by the automobile accident.
Prior to the trial of this matter, the parties entered into a "Joint Trial Stipulation" which provided in part:
1. That claimant, Jeffrey Cain, sustained an injury to his left shoulder on August 20, 1993 while in the course and scope of [h]is employment with Aquarius Builders, Inc.
* * * * * *
4. That the issues presented for trial are:
a. Whether the medical treatment and the arthroscope procedure recommended by Dr. Murphy is reasonable and necessary; and
b. Whether the defendants have been arbitrary and capricious in refusing to authorize the change of orthopedic surgeons and/or their refusal to approve the recommended treatment of Dr. Murphy, and thus subject to penalties and attorney's fees as provided by law.
At the start of trial, the judge entered these stipulations into evidence.
*75 A stipulation has the effect of a judicial admission or confession which binds all parties and the court. Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law, and are the law of the case. La.C.C. art. 1853; R.J. D'Hemecourt Petroleum v. McNamara, 444 So.2d 600 (La.1983), cert. denied, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984); Comberrel v. Basford, 550 So.2d 1356 (La.App. 5 Cir.1989), writ denied, 556 So.2d 1284, 1285, 1286 (La.1990).
Accordingly, the joint trial stipulation entered into by the parties in the present case had the effect of a judicial confession binding both the parties and the court.
The actions of the parties at trial, in entering into the joint stipulation that the only issues at trial were the issues of whether the treatment was necessary and whether the defendants were arbitrary and capricious, amounted to a judicial admission by both parties that the injury was caused by the work-related accident. Therefore, this is no longer an issue between the parties. The correctness of a judicial admission cannot later be denied when the party, which the admission benefitted, relied upon it to his or her detriment. Crawford v. Deshotels, 359 So.2d 118 (La.1978); Dolsen v. City of New Orleans, 559 So.2d 50 (La.App. 4 Cir.1990). Here, the plaintiff relied on the stipulation that causation was not an issue at trial, and that he was not required to prove causation at trial. Having entered into the stipulation which listed which issues were to be determined by the trial court, the defendant cannot now claim that the trial court erred in failing to rule on an issue that was not listed in the joint trial stipulation.
Appellant next argues that the trial court erred in finding that Dr. Rozas recommended the medical treatment, diagnostic testing and surgical procedures as prescribed by Dr. Murphy. Presumably, appellant is also alleging that the trial court committed manifest error in determining that the medical treatment and arthroscopic surgery is reasonable and necessary, and that plaintiff is entitled to medical benefits for the treatment and surgery.
The manifest error or clearly wrong standard of appellate review applies in worker's compensation cases. Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992). Under that standard, the court of appeal should not upset the factual findings of a trial court unless the findings are manifestly erroneous or clearly wrong. A proper review, therefore, cannot be "completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record established that the finding is not clearly wrong." Where two permissible views of the evidence exists, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La. 7/5/94), 639 So.2d 216, 220.
In this case, the trial court considered all the evidence and determined that the medical treatment and arthroscopic procedure recommended by Dr. Murphy was both reasonable and necessary. We can see no manifest error in this finding by the trial judge and, therefore, decline to disturb it.
The defendants next argue that the trial court erred in assessing against them the cost of plaintiff's initial visit to Dr. Murphy. They argue that plaintiff was obligated to pay for this visit because the trial court previously denied plaintiff's request to change treating physicians.
La.R.S. 23:1121 allows the claimant in a worker's compensation case to select one treating physician in any field or speciality. After the initial selection, the claimant is required to obtain permission from the employer or its worker's compensation carrier for a change of treating physician within the same field or speciality.
In this case, the plaintiff requested permission to change physicians; but, his request was denied by both the defendants and the trial judge. However, in her reasons for judgment awarding the plaintiff medical expenses, the trial judge noted that she did not have the benefit of Dr. Rozas's deposition at the time she made her earlier ruling. Consequently, she then made a finding that *76 Dr. Rozas was not plaintiff's physician of choice, but was the employer's choice of physician and that Dr. Murphy was the plaintiff's physician of choice. This decision was well within the discretion of the trial judge. Accordingly, defendants are obligated to pay for plaintiff's initial visit to Dr. Murphy, as well as the subsequent medical treatment and surgical procedure, and the trial judge did not err or abuse her discretion in rendering judgment for the entire amount of Dr. Murphy's expenses.

ARBITRARY AND CAPRICIOUS FAILURE TO PAY
Defendant's argument in this assignment of error is twofold. First, defendants argue that whether the work-related accident caused the necessity for the medical treatment and surgery is still an issue and, therefore, they cannot be arbitrary and capricious in their failure to pay for same. However, by stipulating which issues were presented for trial, defendants have admitted to causation. See discussion supra.
Defendants also argue that the statute in effect at the time this claim for worker's compensation arose did not provide for penalties for the failure of an employer or its worker's compensation carrier's arbitrary and capricious failure to pay medical benefits. However, La.R.S. 23:1201(E) was amended by Acts 1992 No. 1003, effective January 1, 1993 to include the unreasonable nonpayment of medical benefits; and this act was, indeed, in effect in August of 1993 when the plaintiff sustained his work-related injury. Accordingly, this argument is without merit.

CONCLUSION
For the above discussed reasons, the amended judgment of September 8, 1995 is vacated and set aside and the judgment of September 6, 1995 is reinstated, and affirmed.
JUDGMENT OF SEPTEMBER 8, 1995 VACATED AND JUDGMENT OF SEPTEMBER 6, 1995 REINSTATED AND AFFIRMED.
WICKER, J., concurs.
WICKER, Judge, concurring.
I respectfully concur only insofar as I feel an additional argument raised by appellant should be addressed. Appellants argue that a prior judgment denying the claimant's request to change from Dr. Rozas to Dr. Murphy precludes the award of attorney's fees and penalties.
The judgment of February 22, 1996 only denies the claimant's change of physician. It makes no determination that those medical expenses are unreasonable and unnecessary. In February 1994 Dr. Rozas discharged Cain to return to work. Dr. Murphy first saw Cain February 7, 1995. He diagnosed an impingement in the shoulder. On May 1, 1995 Cain's counsel forwarded Dr. Murphy's report to defense counsel. Defense counsel responded by letter dated May 2, 1995 relying on the February 22nd judgment which had not authorized a change in physician. However, Murphy's report was more than a year later and showed problems with the shoulder. The hearing officer evidently concluded defense counsel could no longer rest on the earlier optimistic report by Dr. Murphy. The Louisiana Supreme Court has held in Johnson v. Insurance Co. of North America, 454 So.2d 1113 (La.1984) at 1117:
An insurer is required to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated... If, subsequent to an initial optimistic report, an insurer receives medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits ...
In this case, the defendant made no effort to establish Cain's exact medical condition. Thus, the hearing officer properly awarded attorney's fees and penalties.
NOTES
[1] Dr. Rozas testified that:

`Impingement' can occur when there is some tightness between the acromion process, which is a bone that forms the roof of your shoulder, and it is at the acromion that your collar bone or the clavicle meet and there is a cartilage in between."