692 So.2d 485 (1997)
Wendy G. ALLEMAN, Plaintiff-Appellant,
v.
FRUIT OF THE LOOMCROWLEY, Defendant-Appellee.
No. 96-1246.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1997.
*486 Christopher R. Philipp, Lafayette, for Wendy G. Alleman.
John Nickerson Chappuis, Lafayette, for Fruit of the LoomCrowley.
Before DECUIR, AMY and SULLIVAN, JJ.
AMY, Judge.
In this worker's compensation case, the claimant appeals the decision of the hearing officer denying her claim for surgery which she alleges was required after a work-related accident. For the reasons which follow, the decision of the hearing officer is affirmed.

DISCUSSION OF THE RECORD
The claimant, Wendy G. Alleman, was employed by the defendant, Fruit of the Loom, at the company's Crowley location in October 1994. At that time, the claimant was employed as a customer representative. The record reflects that, as a customer representative, the plaintiff's job duties included inspecting shirts produced at the facility.
The claimant alleges that, on October 13, 1994, she was injured while in the course and scope of her employment. According to her testimony at trial, she loaded several bundles of shirts onto a cart for transport to her work station. While the claimant was pulling the cart, a bundle fell onto the floor. Her testimony reflects that while she was retrieving the bundle, "the stack that was on the cart started to fall, so [she] reached out and grabbed it." She further testified that "[w]hen [she] bent down to catch this bundle that was falling on the side and the stack had started to fall, something popped in [her] back." The record reflects that, despite the popping in her back, she did not report the injury immediately, but, instead, continued to work. The plaintiff also stated that she began to get "stiff" later that evening and that her pain was worse when she woke up the next morning.
The claimant reported her injury the following day to Michael Miniex, a safety manager at the defendant's facility. She testified that she worked about two hours on that day and then asked for permission to leave. Upon leaving work, the claimant went to Dr. Mark Dawson, her family physician, who excused her from work until October 18, 1994.
Rather than return to Dr. Dawson on October 18, the date of her follow-up visit, the claimant sought treatment from Dr. Donald Marx, a chiropractor. Dr. Marx testified, by deposition, that he had periodically provided treatment to the claimant for various problems since 1983. Dr. Marx stated that these early treatments involved treatment for neck and back pain. Dr. Marx further testified that he treated the claimant in 1989 for injuries she sustained in an automobile accident. His reports, which were entered into evidence, indicate that after the automobile accident he felt that "[t]he probability of consistently recurring neck pains and headaches for the next 2 to 3 years is good." He then began seeing the claimant "on an as needed basis."
With regard to the work-related accident at issue in the instant matter, Dr. Marx testified that the claimant came into his office complaining of low back and neck pain, tingling in her fingers, pain in her left arm, and cramping in her right hand. He stated that she attributed this pain to the accident of October 13, 1994. Additionally, he stated that, after examination, he diagnosed the claimant as having "a mild to moderate cervical thoracic and lumbar strain." On October 26, Dr. Marx excused the plaintiff from work dating back to October 18.
Dr. Marx' records further indicate that in November 1994, the claimant requested a referral to Dr. Louis Blanda, an orthopaedic *487 surgeon, for additional treatment. After receiving the referral, the plaintiff first visited Dr. Blanda on January 12, 1995. Dr. Blanda subsequently ordered a cervical and lumbar MRI which, according to his records, revealed that the claimant had "2 levels of small disk herniations in the low back, L4-5 and L5-S1." He also opined that the claimant had "a markedly positive disk herniation at the C5-6 level." Dr. Blanda recommended an anterior cervical fusion. The defendant, however, did not authorize the surgery. In May 1995, Dr. Blanda ordered a myelogram and CAT scan which, he reported "confirmed the findings of the MRI."
At the defendant's request, the claimant was evaluated by Dr. Clifton Shepherd, an orthopaedic surgeon. Dr. Shepherd initially examined the plaintiff in January 1995 and reported that the "examination [was] characterized by lack of objective findings, the presence of severe inconsistencies, and poor efforts." Dr. Shepherd reevaluated the claimant on March 30, 1995. At that time, Dr. Shepherd reviewed the MRI ordered by Dr. Blanda and found that it revealed "slight bulges which are variations of normal." He further reported that "[t]he tests suggest a small left sided disc herniation in the neck." Because he was unsure of the significance of the left sided bulge, Dr. Shepherd ordered a CAT scan. Dr. Shepherd's report of May 3, 1995 reveals that, after reviewing the CAT scan, he found no disc herniation in the neck and concluded that the MRI finding was a false positive. He further opined that the claimant did not have a surgical condition and encouraged a return to her regular activities.
Finally, the Office of Worker's Compensation appointed Dr. James LaFleur, also an orthopaedic surgeon, to perform an independent medical examination (IME). After reviewing the MRI, myelogram, and CAT scan, Dr. LaFleur opined that the claimant's "cervical complaints are associated with the work-related injury." He recommended the discectomy proposed by Dr. Blanda. For the back injury, Dr. LaFleur recommended only conservative treatment.
The defendant initially refused to pay compensation benefits after the October 13, 1994 injury. According to Michael Miniex, the injury was not considered compensable at that time. Additionally, Miniex testified that the claimant never brought a medical excuse to work from either Dr. Dawson or Dr. Marx. Beginning December 21, 1994, however, the defendant paid compensation and made the payments retroactive to the day after the claimant reported the accident. These payments ceased after the defendant received a report on July 19, 1995 from the claimant's estranged husband, Jackie Alleman. The defendant investigated Jackie Alleman's allegations that the claimant was not injured, but had, in fact, engaged in very rigorous activities after the accident. The defendant also gathered reports from Jackie Alleman's sister and mother who confirmed the claimant's activities. Despite having terminated payments, the defendant issued a $3,139.50 check in November 1995. According to Miniex, the check was mistakenly issued, but was subsequently cashed by the claimant.
The claimant filed a Disputed Claim for Compensation form on April 21, 1995 alleging that the defendant had failed to provide copies of Dr. Shepard's medical reports, that benefits had been wrongly discontinued, and that the defendant refused to approve the surgery recommended by Dr. Blanda. Following an April 24, 1996 hearing, the hearing officer found in favor of the defendant. The hearing officer denied the request for additional compensation and for the recommended surgery. Neither penalties nor attorney's fees were awarded.
The claimant timely filed this appeal and now asserts the following: 1) The hearing officer erred in denying the claimant's request for surgery; and 2) The hearing officer erred in failing to award penalties and attorney's fees.

LAW

Denial of Surgical Procedure
Claimant first contends that the hearing officer erred in denying the discectomy recommended by Dr. Blanda. The claimant argues that not only did Dr. Blanda, her treating physician, find objective signs of injury and attribute that injury to her work-related *488 accident, but that this opinion was shared by Dr. Marx, her chiropractor, and Dr. LaFleur, the physician performing the IME. Claimant further asserts that the weight of this medical evidence far outweighs the lay testimony of her former husband and his family which was heavily relied upon by the hearing officer.
La.R.S. 23:1203(A) provides, in pertinent part:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.
In order to establish a claim for medical benefits, a claimant must show that the benefit is occasioned by the work-related accident to a reasonable certainty and by a preponderance of the evidence. Charles v. Aetna Cas. and Sur. Co., 525 So.2d 1272 (La.App. 3 Cir.), writ denied, 531 So.2d 480 (La.1988). Additionally, a claimant must prove, also by a preponderance of the evidence, that a particular medical expense is necessary. See Fritz v. Home FurnitureLafayette, 95-1705 (La.App. 3 Cir. 7/24/96); 677 So.2d 1132.
Further, a hearing officer's determination of whether a medical expense is necessary and occasioned by a work-related accident are factual questions. See Fritz, 677 So.2d 1132. A hearing officer's factual findings are reviewed under the manifest errorclearly wrong standard of review. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706. The appellate court does not determine whether a trier of fact was right or wrong, but whether, after reviewing the record in its entirety, the trier of fact's conclusion was a reasonable one. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). Additionally, if conflict exists in the testimony presented, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed by an appellate court. Id.; Helaire v. La. Sch. for Math, Science, 95-809 (La.App. 3 Cir. 12/6/95); 664 So.2d 816, writ denied, 96-0035 (La.2/28/96); 668 So.2d 369.
In the written reasons for ruling, the hearing officer found:
The court's conclusion that the surgery is not necessary is based upon a credibility determination that Ms. Alleman's complaints are, at the least, exaggerated.
The hearing officer went on to find that the claimant, in her own testimony indicated that she had been able to engage in activities "which were inconsistent with the severity of her complaints." The hearing officer noted that not only did the claimant admit to dancing and swimming after the accident, but that "she sat through a relatively lengthy day of trial with no apparent discomfort...." The reasons for ruling indicate that the hearing officer considered not only the claimant's testimony, but that of the other lay witnesses as well. In particular, the hearing officer found the testimony of Jackie Alleman, claimant's ex-husband, credible.
With regard to the medical testimony, the hearing officer found:
Because the court finds that Ms. Alleman was not truthful about the extent of her complaints, and, as acknowledged by Dr. LaFleur in his deposition, the veracity of the complaints is a significant factor in the recommendation for surgery, the court denies the request for surgery.
The claimant testified that she had, indeed, injured her neck in an automobile accident in 1989. However, the claimant denied that this neck pain continued until the time of the work-related accident.
Jackie Alleman testified that he had witnessed the claimant dance on several occasions after the work-related accident. He, along with his mother and sister, testified that he had seen the claimant jitterbug without difficulty on various occasions. Further, Jackie Alleman testified that the claimant had continuously suffered from neck pain after the 1989 car accident and that she slept on a special pillow prescribed by Dr. Marx after the earlier accident. He stated that after the work-related accident on October 13, 1994, the claimant was sore and worse *489 than she had been, but that he did not observe anything different about her.
The claimant's former sister-in-law, Belinda Prejean, and the claimant's former mother-in-law, Shirley Alleman, both testified that the claimant had suffered from neck pain after the 1989 automobile accident and that the pain continued until the time of the 1994 work-related accident. They also testified that they had observed the claimant jitterbug on several occasions after the accident. Additionally, Belinda Prejean testified that she and the claimant had been swimming several times and that, on those occasions, the claimant would dive and turn flips into the pond.
The claimant presented reports from Dr. Blanda, Dr. LaFleur, and her chiropractor, Dr. Marx. Both Dr. Blanda, her treating physician, and Dr. LaFleur, the physician appointed to perform the IME, recommended surgery based on the results of the MRI, myelogram, and CAT scan. However, while both of the doctor's reports indicated that they were aware of the claimant's previous injury and automobile accident, neither indicate that they had been told that the pain had continued after the earlier accident. When the details of the work-related accident were described to him by the employer's attorney during the taking of his deposition, Dr. LaFleur indicated that he did not think that it was the type of accident that could result in the serious trauma suffered by the claimant.
We find that the hearing officer could reasonably have concluded that the claimant's injury was not caused by the work-related accident at issue in this case. Evidence was presented indicating that the plaintiff's disc problems may not have been related at all to the work-related accident, but could have, instead, been caused by the earlier automobile accident. The lay witnesses, who were found credible by the hearing officer, testified that the claimant had continuously suffered from neck pain after this earlier accident. In light of this evidence, which was not available to Drs. Blanda and LaFleur, the hearing officer could reasonably conclude that the physicians did not have the information necessary to accurately relate the injuries to the work-related accident and that, therefore, their opinions should be given lesser weight. In light of the claimant's burden to prove causation and, what the hearing officer could reasonably consider an inaccurate history presented to the doctors, we do not find that the hearing officer was manifestly erroneous in denying the requested surgery.
Further, although not specifically delineated by the hearing officer, we find sufficient evidence in the record on which the hearing officer could reasonably have concluded that, not only did the claimant fail to establish a causal connection, but that the claimant failed to prove that any additional benefits were due as a result of the 1994 accident. Lay witnesses testified that the claimant had engaged in rather strenuous activities after the accident. These activities, which included swimming, diving, and dancing, may not be, in the view of the hearing officer, consistent with neck and back injuries complained of by the claimant. This view is supported by the report of Dr. Shepherd wherein he opined that the claimant was not injured, but that the objective test findings were merely false positives. Accordingly, we find no error in the hearing officer's determination regarding benefits.

Failure to Award Penalties and Attorney's Fees
The claimant argues that the hearing officer erred in failing to award penalties and attorney's fees. The claimant maintains that the defendant refused to pay compensation benefits for more than two months after the work-related accident, that medical treatment was refused despite objective medical tests indicating a herniated disc, and that benefits were wrongfully terminated based on the accusations of her ex-husband and his family. Accordingly, claimant contends in brief, that the "employer has not reasonably controverted Mrs. Alleman's right to benefits and medical treatment and has acted arbitrarily and capriciously and without probable cause in the handling of this claim."
A claimant may recover statutory penalties if an employer fails to timely pay benefits unless the employee's right to those benefits has been reasonably controverted. *490 La.R.S. 23:1201(E). Additionally, La.R.S. 23:1201.2 provides that the claimant may recover attorney's fees if the employer acted arbitrarily, capriciously, or without probable cause in terminating benefits. A hearing officer is afforded great discretion in awarding penalties and attorney's fees. Miller v. Byles Welding & Tractor Co., 96-164 (La. App. 3 Cir. 6/5/96); 676 So.2d 665. This discretion will not be disturbed unless it is clearly wrong. Id.
The employer did not begin paying compensation benefits until almost two months after being alerted to the accident by Dr. Marx' report which was received on October 26, 1994. However, the report, dated October 18, 1994, does not indicate that the claimant was unable to return to work or that she was being excused from work, only that she had missed three days of work. Michael Miniex testified that he never received a medical excuse from either Dr. Dawson, who saw the claimant the day after the accident, or from Dr. Marx. Miniex further testified that the claimant's condition was not considered compensable until December 1994, at which time, benefits were instituted and were made retroactive to the day after the claimant reported the accident. Additionally, the claimant maintains that the need for the discectomy was not reasonably controverted as both the treating physician and the physician performing the IME recommended surgery.
We conclude that the hearing officer was not clearly wrong in determining that the need for benefits was reasonably controverted. In light of Miniex' testimony that the claimant did not present a work release and that the initial report from Dr. Marx did not indicate that the claimant could not work, we find that the defendant's delay in providing benefits was reasonable. Additionally, in light of Dr. Shepherd's finding that the claimant did not require surgery and the reports of the claimant's ex-husband and his family, we find that the defendant was reasonable in refusing to approve the discectomy procedure.
With regard to attorney's fees, we find that the hearing officer was not clearly wrong in determining that the defendant did not act arbitrarily, capriciously, or without probable cause in terminating the benefits. As previously discussed, the employer was presented with testimony of witnesses who stated that the claimant was not injured, but could engage in rigorous activity. Additionally, the defendant was informed by Dr. Shepherd that the herniation shown on the MRI could be a false positive and that, in his opinion, she did not require surgery. Accordingly, we cannot find that the hearing officer was clearly wrong in finding that defendant was not arbitrary, capricious, or without probable cause in terminating either disability benefits or medical payments.

DECREE
The hearing officer's decision is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, Wendy G. Alleman.
AFFIRMED.