756 So.2d 449 (2000)
Richard CAMPBELL
v.
GOOTEE CONSTRUCTION COMPANY.
No. 99-CA-913.
Court of Appeal of Louisiana, Fifth Circuit.
January 12, 2000.
*450 Christopher M. Landry, Metairie, Louisiana, Attorney for Defendant/Appellant.
Scott W. McQuaig, W. Chad Stelly, Metairie, Louisiana, Attorneys for Plaintiff/Appellee.
Panel composed of Judges CHARLES GRISBAUM, Jr., EDWARD A. DUFRESNE, Jr. and SOL GOTHARD.
GOTHARD, Judge.
This case arises from the Office of Workers' Compensation. Defendant, Gootee Construction Company, appeals from a judgment in favor of plaintiff, Richard Campbell, finding that plaintiff is entitled to lumbar fusion surgery as recommended by his treating neurosurgeon, and awarding to plaintiff $2000.00 in penalties, as well as attorney fees. For the following reasons, we affirm the decision rendered by the Office of Workers' Compensation.
*451 It is undisputed that on June 21, 1993, plaintiff suffered injury to his neck and back, while in the course and scope of his employment with defendant. Since the time of the injury, plaintiff has received indemnity and medical benefits from his employer in accordance with the Louisiana Workers' Compensation Act. On March 19, 1996, plaintiff filed a Disputed Claim for Compensation against defendant after defendant failed to authorize back surgery recommended by plaintiff's treating physician.
The evidence in this case consists of medical records and depositions of various treating physicians. This evidence established that plaintiff was injured while lifting lead lined doors. He went to the AMI Occupational Health Center for treatment. He was first seen by Dr. Pierre Espenan, who diagnosed lumbosacral stain. On July 8, 1993, he was examined by Dr. Robert Mimeles, an orthopedist. Plaintiff underwent an MRI, a myelogram and a CT scan, which showed a bulging of the lumbar disc at L5-S1, which Dr. Mimeles thought represented degeneration of the disc, a "longstanding process." On July 15, 1993 Dr. Mimeles released plaintiff to light duty work, with restrictions. After examination on July 27, 1993, Dr. Mimeles stated that he believed plaintiff suffered from a soft tissue injury; however, he referred plaintiff to a neurosurgeon because plaintiff continued with complaints indicative of a pinched nerve. Dr. Mimeles saw plaintiff on October 28, 1993, and noted that plaintiff had improved with physical therapy and would be "fine" with conservative treatment.
Thereafter, plaintiff was treated by Dr. William Johnston, a neurosurgeon, from August of 1993 until February of 1994. Plaintiff also received physical therapy during this period. Plaintiff had complaints of lower back pain, radiating down his leg, with numbness and tingling. After plaintiff's visit of August 25, 1993, Dr. Johnston further diagnosed sciatic radiculopathy at the S1 level. In January of 1994, Dr. Johnston requested an MRI. The MRI revealed that Campbell suffered from degenerative changes, retrolisthesis at the L5-S1 level, with a central bulge. Light duty work restrictions were continued.
On November 10, 1993, at the request of defendant, plaintiff was examined by Dr. John Schumacher. Dr. Schumacher diagnosed lower back syndrome and a bulging disc at L5-S1, and recommended continued physical therapy. He further stated that Campbell would not be able to continue in the construction industry. Dr. Schumacher concluded that he would not recommend surgery at that time; however, if plaintiff's symptoms worsened and he continued to have radicular pain, plaintiff "may very well need surgery if all else fails."
On March 1, 1994, plaintiff was evaluated by Dr. Wilmot Ploger. Dr. Ploger examined plaintiff and found no mechanical dysfunction of the lower spine. Dr. Ploger considered the various diagnostic tests that had been previously done, and his interpretation was that these tests showed degeneration of the lumbosacral disc, with a slight retrolisthesis at the L5-S1 level, with no evidence of nerve root deformity. Dr. Ploger stated that he could not explain Campbell's complaints of lower back pain, and therefore had nothing further to offer him in the form of treatment. He recommended that plaintiff return to light to sedentary type work, and that based on plaintiff's complaints he should not return to an occupation where he would have to do repetitive stooping, lifting and carrying of heavy objects.
On May 30, 1994, and again on June 13, 1994, plaintiff was examined by Dr. Toussaint Leclercq, a neurosurgeon. At that time, plaintiff was still complaining of lower back pain and radiation of pain into the left leg. Upon examination, Dr. Leclercq found moderate, and then severe paravertebral muscle spasms. Dr. Leclercq reviewed the prior diagnostic studies and diagnosed a herniated lumbar disc, and he recommended that plaintiff undergo a *452 microsurgical discectomy and lumbar fusion.
Plaintiff returned to Dr. Leclercq on August 1, 1994, (one year after the injury) with complaints of pain in the lower back. Dr. Leclercq again recommended surgery, and he recommended that plaintiff be treated by Dr. Steven Kischner, in the interim, for conservative care. Plaintiff returned to Dr. Leclercq on January 11, 1995, on recommendation of Dr. Kischner. Dr. Leclercq again recommended surgery which, he stated, "should not be delayed".
Dr. Kischner treated Campbell on several occasions in 1994 and 1995. Kischner injected "trigger points" and also prescribed pain medication. On November 24, 1994, Dr. Kischner recommended referral back to Dr. Leclercq for surgical consideration as all conservative treatment had failed. On April 26, 1995, Dr. Kischner opined that plaintiff had reached maximum medical recovery and he recommended that plaintiff be restricted to sedentary work duty.
On August 10, 1994, plaintiff was again examined by Dr. Schumacher. He found that plaintiff complained of pain and he limited his range of motion to 15-20 degrees. He noted that there was no paraspinous muscle spasms at the date of examination. He looked at the MRI and found degeneration with a slightly bulging L5-S1 disc, and no objective evidence to support plaintiff's complaints. He further stated that he found no indication for neurosurgical intervention.
On March 14, 1996, plaintiff was seen by Dr. Howard Katz, who diagnosed lumbar strain with a small herniation. Dr. Katz opined that plaintiff was at maximum medical improvement. He recommended that the plaintiff do warm up exercises before going to work, and in the evening. He also stated that a muscle relaxer might be beneficial when the plaintiff returned to work. Dr. Katz believed that plaintiff could return to work as a working foreman with defendant, without restrictions.
On September 16, 1996, an Independent Medical Examination (IME) was conducted by Dr. Mark Rosenbloom, who diagnosed chronic lower back pain syndrome. Dr. Rosenbloom noted that the imaging studies had shown a bulging disc and sponydelolisthesis; however, he could not determine whether these conditions contributed to plaintiffs pain. He stated that plaintiff would have severe difficulty with returning to any type of gainful employment since he would continue to experience severe exacerbations of pain in his lower back region.
On March 25, 1998, Dr. Leclercq again recommended that plaintiff have surgery. He noted that plaintiff continued to have pain in the lower part of his spine at the L5-S1 level, that he had an abnormal ankle jerk on the left side, and that he continued to have back pain, with radiation into the left lower extremity, on a daily basis. Dr. Leclercq observed that plaintiff had suffered with the same symptoms for an extended period of time with no relief from conservative treatment.
On October 8, 1998, an IME was conducted by Dr. Robert Applebaum of the Culicchia Neurological Clinic. He opined that plaintiff did not have a herniated disc or nerve irritation, but he did have some degenerative disc disease which probably predated the accident. Dr. Applebaum concluded that plaintiff was not a candidate for any surgical intervention.
Based on this evidence, the worker's compensation judge found that plaintiff was entitled to surgery as requested in his disputed claim for compensation. The judge further found that defendant was liable for penalties and attorney fees for failure to pay for these claims. Defendant appeals from this decision.
Initially, we note that the law in effect at the time of the injury controls in workers' compensation cases, Kortz v. Colt Energy Services, Inc. 97-159 (La.App. 5 Cir. 7/29/97), 698 So.2d 460.
*453 At the time of plaintiff's injury in June of 1993, La. R.S. 23:1203(A) provided in pertinent part that:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.[1]
In order to establish a claim for medical benefits, a claimant must show by a preponderance of the evidence that, 1) the benefit is occasioned by the work related accident to a reasonable certainty, and 2) that a particular medical expense is necessary. Alleman v. Fruit of the Loom-Crowley, 96-1246 (La.App. 3 Cir. 3/5/97), 692 So.2d 485. A hearing officer's determination of whether a medical expense is necessary and occasioned by a work related accident are factual questions. Alleman, supra. The manifest error-clearly wrong standard of appellate review applies in worker's compensation cases. Cain v. Aquarius Builders, Inc., 96-66 (La.App. 5 Cir. 7/30/96), 680 So.2d 69.
In this case, there is no dispute that claimant was injured in a work related accident. Likewise, there is no dispute that the injury was to plaintiff's lower spine. At issue is whether the particular medical expense requested, that is the expense of the back surgery, is necessary.
Defendant argues that the trial court erred in finding the expense necessary, because she failed to give more credit to the IME conducted by Dr. Applebaum, in which the doctor stated that surgery was not required.
La. R.S. 23:1123 provides that the report of the appointed independent medical examiner "shall be prima facie evidence of the facts therein stated ..." However, the report of the IME is not conclusive.
[W]hile the law permits the hearing officer to appoint a physician to perform an independent medical examination, it does not require the hearing officer to accept his conclusions. A hearing officer simply does not cede the responsibility afforded her office when she chooses to appoint an independent medical examiner. (Citation omitted).
Sterling v. Orleans Parish School Bd., 96-0107 (La.App. 4 Cir. 6/26/96), 679 So.2d 167, 173, citing Menard v. Winn Dixie Louisiana, Inc., 93-1497 (La.App. 3 Cir. 6/1/94), 640 So.2d 775, 783.
In this case, the trial judge was presented with the results of examinations conducted over a five year period from the date of accident to the date of trial, and conducted by several doctors, including physicians selected by the plaintiff and the defendant, as well as the independent doctors. Considering this evidence as a whole, and considering the recommendations from both Drs. Leclercq and Kishner that surgery is needed, we can find no manifest error in the ruling of the hearing officer.
Defendant next contests the award of penalties and attorney fees. The assessment of penalties and attorney's fees by the worker's compensation judge is a factual question which will not be disturbed on appeal in the absence of manifest error. Kortz v. Colt Energy Services, Inc., supra.
At the time the plaintiff was injured, in June of 1993, R.S. 23:1201(E) provided for a 12% penalty for an employer's failure to timely pay compensation benefits.[2] However, penalties were not to *454 be assessed when the employee's right to the benefits was reasonably controverted by the employer of insurer. Kortz v. Colt Energy Services, Inc., supra. Furthermore, La. R.S. 23:1201.2, as it existed in 1993, provided for an award of attorney fees when an employer or insurer acted arbitrarily and capriciously and without probable cause in failing to pay.[3]Kortz v. Colt Energy Services, Inc., supra.
In Starks v. Universal Life Ins. Co., 95 1003 (La.App. 1 Cir. 12/15/95), 666 So.2d 387, 394, writ denied 96-0113 (La.3/8/96), 669 So.2d 400, the court said:
The statutes providing for penalties and attorney's fees, which are penal in nature, must be strictly construed. An assessment of penalties and attorney's fees is proper unless the employee's rights to benefits are reasonably controverted. The test to determine whether the employee's right to benefits was reasonably controverted is set forth in Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990), citing Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La. App. 3rd Cir.1985), as follows:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. (Citations omitted, in part.)
In this case, the trial court gave no reasons for judgment. However, she apparently found that the employer did not have a reasonable basis to controvert plaintiff's claim for back surgery, and that defendant was arbitrary and capricious in its failure to pay for those expenses, as she awarded penalties of $2,000.00 and attorney's fees.
The employer relied on the results of the IME conducted by Dr. Applebaum *455 to establish that it had reasonably controverted plaintiff's claims for back surgery. However, there were several doctors who reviewed the diagnostic tests and found that plaintiff had a herniated disc. In addition, the neurosurgeon who had treated plaintiff for years steadfastly continued to recommend surgery. Under these particular circumstances, we do not believe that the employer sufficiently controverted plaintiff's claim by relying on the results of the IME, where the doctor examined the plaintiff only one time. We can see no manifest error in the trial court's decision.
For the above discussed reasons, the decision of the worker's compensation judge is affirmed. All costs of this appeal are assessed against appellant.
AFFIRMED.
NOTES
[1] Acts 1988, No. 938, effective 1/1/89.
[2] La. R.S. 23:1201 read, in pertinent part:

E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for worker's compensation insurance. Whenever the employee's right to such compensation or medical benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent or fifty dollars per calendar day, whichever is greater, additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the administrative hearing officer determines that the twelve percent or fifty dollars per calendar day, whichever is greater, additional payment is to be made by the employer rather than the insurer. Any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee. The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate. (Acts 1992, No. 1003, effective 1/1/93).
[3] La. R.S. 23:1201.2 provided that:

Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. (Acts 1998, No. 732).