CHEHARDY, C.J.' |TOn appeal,- this pro se workers’ compensation claimant seeks review of the judgment denying indemnity and additional medical benefits. For the following reasons, we affirm. Facts and Procedural History On August 17, 2013, claimant, Eduardo Sanchez, an ironworker for his employer, MEMCO, Inc., slipped from a metal beam while he was working. Mr. Sanchez did not strike the beam and was immediately caught by his safety harness, which held him until his co-workers could lower him to the ground. After he was safely on the ground, Mr. Sanchez was examined by medical personnel at the worksite and sent home to rest. The next day, Mr. Sanchez reported to work and complained of a headache and pain in his right lower back, his middle back, his “uppier neck,” and his right testicle, Mr. Sanchez was sent home and, the next day,- Mr. Sanchez’s supervisor at MEMCO sent him to Dr. David Reiss at Elmwood Industrial Medicine Center. On August 19, 2013, Mr. Sanchez’s chief complaint was “pain located in the lower back and neck.” Dr. Reiss noted that, upon physical examination, Mr. Sanchez had no bruising, spasm, or tenderness present in his lumbar spine and exhibited normal range of motion and normal sensation. Further, Dr. Reiss found, upon examination of his cervical spine, Mr. Sanchez had normal range of motion and no bruising present but did present tenderness in the “midline of the lower cervical spine.” X-rays of the, cervical and lumbar.spine were normal.-Dr. Reiss diagnosed Mr. Sanchez with a cervical strain and a lumbar strain and released Mr. Sanchez to return to work “as tolerated.” On August 21, 2013⅝ Mr. Sanchez presented to the Emergency Department at Tulane-Lakeside Hospital in Metairie with complaints of chest pain, testicular pain, and lumbar pain. After reviewing x-rays of his chest and lower back and | ¿performing a physical examination, the Emergency Room physician, Mary Martin, M.D., diagnosed him with lumbosacral strain;. chest wall contusion; and a scrotal contusion. Dr. Martin prescribed Percocet and Flex-eril to Mr. Sanchez. That, day, another physician ordered a CT; scan of Mr. Sanchez’s chest to .further examine the contusion, which revealed no abnormality. On August 22, 2013,. Mr. Sanchez returned to Dr. Reiss for a follow-up. That day, Mr. Sanchez indicated that .he had pain in his lower back but his neck was “okay.” Dr. Reiss noted that, upon physical examination, Mr. Sanchez had no bruising or spasm in his lumbar spine and exhibited normal movement of his lower back and normal sensation. Dr. Reiss diagnosed Mr. •Sanchez with a lumbar strain and found his cervical strain to be resolved. Dr. Reiss released Mr, Sanchez-to return to work on restricted duty “as tolerated.” On September 3, 2013, Mr. Sanchez returned for his second follow-up with Dr. Reiss.[1] He reported that he “feels good” and “is free from pain.” Dr. Reiss noted that, upon physical examination, Mr, Sanchez had no spasm or tenderness present in his lumbar spine and exhibited normal range of motion and normal sensation. Dr. Reiss found that the “clinical examination indicates that he has recovered” and diagnosed Mr, Sanchez with cervical strain, resolved, and a lumbar strain, resolved. Dr. Reiss released Mr. Sanchez to return to work, “full duty,” and discharged him from the clinic. At that point, Mr. Sanchez returned to .work, full duty. On September 30, 2013, Mr. Sanchez returned to Dr. Reiss to report that he “hurts again” in the upper left lumbal’ region. Upon examination, Mr. Sanchez showed pain in his thoracic spine and tenderness • in the “left rhomboid' area.” Although lumbar and thoracic- x-rays were normal, Dr. Reiss diagnosed Mr, |aSanchez with thoracic strain and lumbar strain and released Mr. Sanchez to work “as tolerated.” Lastly, Dr. Reiss referred Mr. Sanchez to an orthopedist, Dr. Melvin Parnell. On October 9, 2013, Mr. Sanchez presented ;to Dr. Parnell with complaints of pain in both sides of his back and waist. Dr. Parnell found that Mr. Sanchez had limited range of motion and discomfort in his thoracic, spine and lumbar spine-but “no significant abnormality present on physical examination to ■ indicate he sustained any major injury to these regions,” Dr. Parnell diagnosed Mr. Sanchez with a continuing lumbar strain but a resolved cervical strain. Dr. Parnell returned Mr. Sanchez to work with no physical restrictions. On October 17, 2013, Mr. Sanchez returned for his follow-up with Dr. Parnell and reported “occasional episodes of discomfort but no significant pain and feels ... improved significantly since ... his last visit.” Dr. Parnell noted that his physical examination showed that Mr. Sanchez has regained full range of motion in both his thoracic and lumbar spine. Dr. Parnell found that Mr. Sanchez had reached maximum medical improvement. Dr. Parnell returned Mr. Sanchez to work with no physical restrictions and discharged him from care. On October 28, 2013, Mr. Sanchez visited a chiropractor, Michael Haydel, D.C., at the Medical Rehab Accident Injury Center (“MRAIC”), who examined Mr. Sanchez and diagnosed .him with lumber sprain/ strain, lumbar neuritis, lumbago, and thoracic myofascitis. Dr. Haydel found that Mr. Sanchez’s prognosis was guarded, restricted him from all work,[2] prescribed “aggressive physical therapy,” and referred Ms. Sanchez to his partner, Dr. Elliott Greenberg, for medication management. l4On October 29, 2013, Mr. Sanchez returned to MRAIC for an appointment with orthopedist, Dr. Elliott Greenberg. At that visit, Dr. Greenberg found “limited range of motion with moderate ... tenderness, and spasm” in the “lower thoracic and lumber spines” and diagnosed Mr. Sanchez with lower thoracic and lumbar spinal strain/sprain. On January 21, 2014, Mr. Sanchez filed a Disputed Claim for Compensation Form 1008 contending that MEMCO, Inc. and its insurer, AIG Insurance, Inc., (hereinafter “MEMCO”) were unlawfully refusing to pay wage benefits and/or medical treatment related to his injury of August 17, 2013. Mr. Sanchez also sought penalties, attorney fees, costs, legal interest, and SEBs. In response to the Disputed Claim, MEMCO denied all of Mr. Sanchez’s allegations and specifically pled that Mr. Sanchez had an intervening accident after October 17, 2013, which caused his current condition. Later in 2014, after conservative treatment for one year, Dr. Haydel recommended an MRI of Mr. Sanchez’s lumbar spine, which was approved by the Louisiana Workforce Commission on October 1, 2014. On October 17, 2014, the radiologist found that the MRI of Mr. Sanchez’s lumbar spine revealed herniation of the disc between L5-S1. On October 27, 2014, Dr. Haydel recommended that Mr. Sanchez be examined by a neurosurgeon. On February 11, 2015, Mr. Sanchez presented to his neurosurgeon, Dr. Kelly Scrantz, and reported moderate lower back pain and mild neck pain. Dr. Scrantz found that the MRI of Mr. Sanchez’s lumbar spine showed no herniation or compression but rather an “annular bulge.” Further, Dr. Scrantz did not believe that Mr. Sanchez exhibited sufficient sympto-mology to warrant injections or surgery. On April 24, 2015, Mr. Sanchez presented to Dr. Jorge Isaza, an orthopedist. During this visit, Mr. Sanchez reported neck pain, headaches, and pain in his right | Jower back. Dr. Isaza diagnosed Mr. Sanchez with a cervical strain; annular tear in the disc between L5-S1; and SI joint dysfunction. Dr. Isaza recommended an epidural steroid injection to Mr. Sanchez’s sacroiliac joint. Although Mr. Sanchez reported that he received an injection, neither documentation of approval of that procedure nor the medical records for that procedure were introduced into evidence at trial. On September 2, 2015, Mr. Sanchez returned to Dr. Parnell for an independent medical examination of his cervical and lumbar spines. On that day, Mr. Sanchez reported that he had continuing pain in the middle of his back and in his pelvis. Further, he has pain in. his right leg when he walks “a lot” and pain in his neck that causes headaches. When Dr. Parnell examined Mr. Sanchez, he found a mild limitation of cervical spine range of motion but a full range of motion in the lumbar spine. Dr. Parnell found “no objective evidence of either nerve root entrapment or mechanical abnormality of the cervical spine” and no evidence of “any permanent impairment to his cervical, thoracic, or lumbar spines as a result of his reported accident on August 17, 2013.” On January 13, 2016, Mr. Sanchez underwent a second independent medical examination as ordered by the workers’ compensation judge. Dr. Ralph Katz, orthopedist, noted that Mr, Sanchez reported daily pain in the back of his head and in the mid-portion of the right lumbar spine but very little neck pain and no radiculopathy. During the physical examination, Dr. Katz noted that Mr. Sanchez exhibited pain in his scalp on the back of his head. When Dr. Katz examined Mr. Sanchez’s cervical spine, he observed full range of motion with no spasms and no tenderness. Upon examining Mr. Sanchez’s lumbar spine, Dr. Katz found no spasms but that Mr. Sanchez exhibited pain around the L3 area in the midline and on the right side at L5-S1. IfiDr. Katz ordered and reviewed multiple x-rays of Mr. Sanchez’s lumbar and cervical spines, which showed overall good alignment. Further, an x-ray of the L5-S1 reflected “a very subtle small central bulge.” After reviewing all medical records, including the MRI, Dr. Katz agreed with Dr. Parnell that Mr. Sanchez’s original cervical and lumber strain, which were sustained in the work-related accident, were resolved. He found that Mr. Sanchez was at maximum medical improvement and should return to “full-duty work with no restrictions.” Trial commenced on May 19, 2016. At the commencement of trial, the parties stipulated that Mr. Sanchez was an employee of MEMCO on the date of the accident, August 17, 2013. They also stipulated that the accident occurred in the course and scope of Mr. Sanchez’s employment. Further, the parties stipulated to the introduction of the claimant’s and MEMCO’s exhibits, which included the log of medical payments made by MEMCO for claimant, claimant’s wage statement, and extensive medical records. At the conclusion of trial, the workers’ compensation judge allowed the parties additional time to submit post-trial memoranda. On August 8, 2016, the judge rendered judgment finding that claimant, Mr. Sanchez, failed to meet his burden that he was, as a result of his work-related injury, disabled from work and, thus, not entitled to, additional indemnity or medical benefits, and rendered judgment in favor of MEMCO.[3] Mr. Sanchez, who appears in proper person, appeals that judgment. jjLaw and Argument On appeal, Mr. Sanchez alleges that the trial court erred in failing to find that he was owed “back pay ... for workers[síe ] compensation during the time of coming to the agreement” as well as payment for continuing medical treatment, including injections. Initially, MEMOO responds by pointing out that Mr. Sanchez failed to -brief his assignment of errors, pursuant to Uniform Rules—Court of Appeal, Rule 2-12.4. As argued by MEMCO, where an appellant fails to brief an assignment of error, the appeal court may deem that assignment abandoned. Admittedly, Mr. Sanchez does, not substantially brief each assignment of error made, but with due consideration to this pro se litigant, we will address the relevant issues. The Workers’ Compensation Act set up a court-administered system to aid injured workmen by. relatively informal and flexible proceedings. Rhodes v. Lewis, 01-1989 (La. 5/14/02), 817 So.2d 64. The provisions of the workers’ compensation law are to be interpreted liberally in favor of the worker. Coats v. AT & T, 95-2670 (La. 10/25/96), 681 So.2d 1243. Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of-appellate review. Banks v. Industrial-Roofing and Sheet Metal, 96-2840 (La. 7/1/97), 696 So.2d 551, 556. The determinations by the workers’ compensation judge as to whether the claimant’s testimony is credible and whether the claimant has discharged his burden of proof are factual determinations and will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Bruno v. Harbert Int’l, Inc., 593 So.2d 357, 361 (La. 1992). The reviewing court is compelled to review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Wise v. H.B. Zachary Co., 00-3 (La.App. 5 Cir. 4/25/00), 760 So.2d 500. In applying the manifest error/clearly wrong standard, the appellate court does not determine whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a' reasonable one. Id. If the factual findings are reasonable in' light of the recdrd reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Marange v. Custom Metal Fabricators, Inc., 11-2678 (La. 7/2/12), 93 So.3d 1253, 1257, 1260 (citing Stobart v. State, DOTD, 617 So.2d 880, 883 (La. 1993)). In his argument, Mr. Sanchez contends that the workers’ compensation judge erred in failing to award him “back pay.” /Whether a workers’ compensation claimant seeks temporary or permanent total disability benefit's, the claimant bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment. La. R.S. 23:1221(l)(c); La. R.S. 23:1221(2)(c); Jimmerson v. Johnson Storage & Moving Co., 13-962 (La. App. 5 Cir. 5/14/14), 142 So.3d 111, 116-117; Baker v. Harrah’s, 15-0229 (La. App. 4 Cir. 3/9/16), 190 So.3d 379, 393. A claimant must present objective medical evidence to establish by clear and convincing evidence that he is unable to engage in any type of employment. Fassitt v. Jefferson Parish Hosp. Serv., 07-695 (La. App. 5 Cir. 12/27/07), 974 So.2d 757, 760. La. R.S. 23:1123 provides that the report of the appointed independent medical examiner “shall be prima facie evidence of the facts therein stated .... ” Although a workers’ compensation judge is not required to accept the conclusions of an independent medical examiner, Campbell v. Gootee Construction Co., 99-913 (La. App. 5 Cir. 1/12/00), 756 So.2d 449, 453, the medical conclusions of an independent medical examiner should be given significant weight, because the independent medical examiner is an objective party. Clark v. Godfrey Knight Farms, Inc., 08-1723 (La. App. 1 Cir. 2/13/09), 6 So.3d 284, 295, writ denied, 09-562 (La. 5/29/09), 9 So.3d 163. In this case, the record before us contains evidence that Mr. Sanchez returned to work with MEMCO from a few days after his accident until October 29, 2013. During that time, Dr. Parnell found that Mr. Sanchez was at maximum medical improvement on October 17, 2013. Dr. Katz, in his independent medical examination, agreed with Dr. Parnell and also found that Mr. Sanchez was at maximum medical improvement. As noted above, it is the claimant’s burden to prove by clear and convincing evidence that he is physically unable to engage in any. employment or self-employment due to his injury. However, the record before us does not contain clear and convincing evidence that Mr. Sanchez is physically unable to engage in any employment due,ho his injury,' In fapt, .at least three doctors, including his own neurologist and the .independent orthopedist, agree that he is able to return to work. Accordingly, we find no error in the workers’ compensation judge’s determination that Mr. Sanchez was not entitled to further indemnity benefits.' Further, a workers’ compensation claimant may recover medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work-related injury. Here, the claimant did not producé sufficient proof of the necessity of further medical treatment. Accordingly, we find no error in the workers’ compensation judge’s determination that Mr. Sanchez was not entitled to future medical benefits. Conclusion For the foregoing reasons, we find no error in the workers’ compensation judge’s ruling in this case. Accordingly, this judgment is affirmed. AFFIRMED. . The medical records reveal that Mr. Sanchez had originally been scheduled to see Dr. Reiss on August 27, 2013, but postponed his appointment, against doctor's orders,, to take a trip to Honduras. . From October 2013, the me.dical records reflect Dr. Haydel restricted Mr. Sanchez from work until at least January IS, 2015. At trial on May 19, 2016, Mr. Sanchez reported that he had not worked since October 29, 2013. . We note that the judgment at issue was rendered "against claimant, Eduardo Sanchez, with prejudice,” but failed to include language of dismissal, i.e. “the claim is dismissed.” "[A] final judgment must contain decretal language and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the specific relief that is granted or denied." Morraz-Blandon v. Voiron, 16-112 (La. App. 5 Cir. 8/25/16), 199 So.3d 1220, 1221. "The specific relief granted or denied should be' determinable from the judgment itself without reference to an extrinsic source such as pleadings or reasons for judgment.” Id. Here, we can determine that the matter, was granted in favor of the lone defendant and against the lone claimant, Further, we know from the judgment that Mr, Sanchez's claims were denied "with prejudice,” which is sufficiently definite to determine the merits of this workers’ compensation controversy. See La, R.S. 23:1310.5; R.S. 23:1317, Consequently, although we know that, under La. R.S. 23:1317, the workers’ compensation judge shall not be bound by technical rules of procedure unless specifically provided, we point out that it is preferable to include definitive language of dismissal in a final judgment.