546 So.2d 952 (1989)
Larry MENARD, Plaintiff-Appellee,
v.
MULTI-SERVICE CORP., et al., Defendants-Appellants.
No. 88-517.
Court of Appeal of Louisiana, Third Circuit.
July 5, 1989.
Rehearing Denied August 1, 1989.
*953 Dennis Stevens, New Iberia, for defendants-appellants.
Toxie Bush, Jr., Abbeville, for plaintiff-appellee.
Before STOKER, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
In this worker's compensation appeal, the trial judge found that back surgery recommended by the plaintiff's treating physician was necessary under the terms of La. R.S. 23:1203(A), and that the refusal of the employer and its insurer to provide a letter of responsibility to pay for the surgery was arbitrary and capricious, entitling plaintiff to an award of attorney's fees of $2,500, and costs. The employer and insurer appealed those holdings, and the plaintiff answered the appeal asking for an increase in attorney's fees.
After careful consideration of this record, we affirm the trial court, adopting its excellent reasons for judgment as our own, as follows:
LARRY MENARD was injured in the course of his employment on March 18, 1986. The injury occurred when a coworker suddenly dropped his end load of plywood, causing Mr. Menard to absorb the sudden shock of the load hitting the ground as well as the immediately following increase in weight. The plaintiff was vulnerable to this type of injury due to previous trauma to the back and consequent surgery, and his testimony was that he was immediately and constantly thereafter in pain.
The injury and the need for treatment are not in dispute and it is clear that Mr. Menard's injuries were compensable. The director's recommendation was received on November 18, 1986 and both parties accepted it. The recommendation was that Mr. Menard receive temporary total benefits from March 19, 1986 until he became physically able to return to gainful employment. In addition, all related medical expenses were to be paid in accordance with the Act. The recommendation further stated that, "If a medical dispute presently exists, you should in writing request that our Office set up an independent medical examination (IME) for the claimant."
Benefits were paid through most of 1986, as were medical bills incurred by the plaintiff pursuant to treatment by Dr. John E. Cobb.
Although Dr. Cobb at first felt that Mr. Menard's condition could be successfully treated with physical therapy and medication for pain, he eventually concluded that a fusion was necessary.

*954 At this point defendant's insurer, Traveler's Insurance Company, requested that Mr. Menard undergo an examination by Dr. Michael Heard.
Dr. Heard recommended against surgery, having given no new tests. There is nothing which indicates that defendants applied to the commission for a ruling. Rather than waiting out the remainder of the six months period and applying for a modification of the recommendation, defendants refused to pay for the surgery which Dr. Cobb had requested.
The depositions of Dr. Cobb and Dr. Beard [sic] indicate that all of the diagnostic tests which have been interpreted in this case were conducted by Dr. Cobb, with the sole exception of a cursory physical examination by Dr. Heard. It is also apparent from Dr. Heard's deposition that he understood that he was dealing with a seriously damaged patient. Dr. Heard himself recites the patient's history of heart problems with a mitral valve problem, a previous surgery for bladder problems, and a previous fusion. The patient had also had removal of a distal phalanx and a previous neck surgery to include removal of a disc. Dr. Heard also opined that the patient should have permanent work restrictions with no heavy lifting of more than forty (40) pounds maximum, twenty (20) pounds repetitive, no repetitive lumbar bending, twisting or prolonged exposure to vibrational stresses.
In short, the defendant's insurer, Traveler's, had an opinion from Dr. Heard, hired by Traveler's, which advised against surgery on the basis of a single physical in which no diagnostic tests were given, and the controverting opinion was based solely on Dr. Cobb's diagnostic work.
Even if Dr. Heard had conducted an examination as extensive as the repeated examinations of Dr. Cobb, our jurisprudence accords superior weight to the treating physician. This rule has most recently been stated in White v. Eagle Welding and Fabrication, 509 So.2d 194 (La.App. 1 Cir.1987), where Judge LeBlanc remarked that:
`It is clear under Louisiana law that the diagnosis and opinions of treating physicians are entitled to more weight than those doctors examining the plaintiff for litigation purposes only. Jaeckle v. Dresser Industries, Inc., 457 So.2d 646 (La.1984).'
Such a rule applies with even greater force when the treating physician has conducted many diagnostic tests and the opposed opinion is merely based on a different interpretation of those findings.
Finally, defendants' attempt to inject an issue of causation in order to argue that the operation was not a necessary expense. This argument was based upon Dr. Cobb's progress notes, which were made available to defendants during discovery. The plaintiff's symptoms were observed to have worsened, and his complaints became more strident, following an aggravating trauma to the lower back caused by the necessity of lifting a transmission which had fallen upon his brother. Dr. Cobb's testimony was that the condition to be corrected by the operation was caused by a combination of a pre-existing vulnerability due to the previously described traumatic history, and subsequent sudden stress to the affected area.
Following the second injury, Dr. Cobb examined Mr. Menard and found that while the patient described pain increase in his leg due to lifting the transmission, which would suggest weakness in the L5 area, he found no weakness in the L5 nerve distribution.
Additionally, Dr. Cobb pointed out that the accident on the job was exactly the type of incident which would cause disruption of a disc, where the energy created by the force of the accident is absorbed in generally a flexion-axial-loading type of mechanism which exceeds the capacity of the spine to distribute weight and causes a bursting effect.
Consequently, the court rejects the defendants' argument that the operation, if necessary, is not causally related to the injury sustained when Mr. Menard was at work. Neither Dr. Cobb nor Dr. *955 Heard support the defendants' argument.
Actually, Dr. Heard disagreed with no medical finding of Dr. Cobb. He disagreed with the use of discography as a diagnostic tool, and he speculated differently concerning the balancing of risk of surgery against probable benefits. The plaintiff, however, was willing to accept those risks to escape pain.
Dr. Heard indicated the patient had been harmed:
`And I think he should have permanent work restrictions in the future of no heavy work, no heavy lifting of more than approximately 40 pounds maximum, 20 pounds repetitive, no repetitive lumbar bending, twisting or prolonged exposure to vibrational stresses.' (Heard, p. 21)
Dr. Heard indicated the patient was in pain, or should be:
`There's no way of me knowing how much pain the man has. He reports pain and he certainly has a condition that should be painful. The exact extent of his pain is reallyI can't measure and determine.' (Heard, p. 23)
Finally, Dr. Heard did not seem willing to flatly gainsay Dr. Cobb's medical judgment:
`It's just a difference of opinion because these patients with these complaints and problems, these issues aren't black and white. You just can't plug them into a machine and say operate or don't operate. It's very difficult in trying to determine who needs what. `It's probably more difficult doing that than actually doing the procedure. So I'm not saying Dr. Cobb is right or wrong or I'm right or wrong. It's just I do have a different opinion and my opinion is I don't think he's going to improve with the proposed operation.' (Heard, pp. 30-31)
In view of the fact that no new findings concerning the plaintiff's condition were made and the controverting medical opinion reflects a difference in diagnostic technique and treatment philosophy, rather than a solid dispute as to the clinical condition of the patient, we find that defendants' refusal to pay reasonable medical expenses was arbitrary and capricious. Attorneys fees are awarded in the amount of two thousand, five hundred dollars ($2,500.00).
As it read at the time of this accident, R.S. 23:1203(A) required the employer to furnish all necessary medical, surgical, and hospital services, and medicines, as would provide the injured employee with such necessary services. Insofar as it is pertinent to the present case, the rewording of the current law as provided by 1988 legislation makes no substantial change, as the word "necessary" is the key word to the determination of whether the employer is required to provide the disputed medical expenses. This is a question of fact to be decided by the trial court. We find no error in the trial court's determination in this case that the surgery was necessary.
This record also fully supports the trial court's determination of the other finding of fact, that the employer and insurer were arbitrary and capricious in refusing to give the requested guarantee. The only basis on which Dr. Heard questioned the reliability of discography was its use as a diagnostic tool for the discovery of herniated discs. Dr. Cobb relied on the test for the diagnosis of segmental instability or translatory instability, an altogether different condition. Also, Dr. Heard's opinion that surgery was not necessary was based upon his belief that it would not restore Menard to his former condition. Dr. Cobb made no pretense of believing that his recommended surgery would restore Menard to his former condition; he was optimistic, however, that it would eliminate or greatly reduce Menard's very substantial pain. Under the statute the medical and non-medical treatment to which the injured employee is entitled is not limited to that which will cure his disability, but includes also that which is necessary to relieve the pain which he suffers as a result of his disability. Gourdon v. Rockwood Insurance Co., 368 So.2d 1156 (La.App. 3d Cir.1979). The refusal to authorize medical treatment based upon the limited examination *956 of Dr. Heard was arbitrary and capricious and defendants were liable for attorney's fees. La.R.S. 23:1201.2; Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37 (La.App. 3d Cir.1981), writ den. 412 So.2d 85 (La.1982); Savoy v. McDermott, Inc., 520 So.2d 888 (La.App. 3d Cir.1987). See also Berkel v. Aetna Casualty & Surety Co., 462 So.2d 1287 (La.App. 5th Cir.1985).
Attorney's fees will be increased by an additional amount of $750 for services rendered on this appeal, and defendants will pay all costs.
AFFIRMED.