710 So.2d 340 (1998)
Charlene BRASSEAUX, Plaintiff-Appellant,
v.
ABBEVILLE GENERAL HOSPITAL, Defendant-Appellee.
No. 97-1062.
Court of Appeal of Louisiana, Third Circuit.
March 18, 1998.
*341 Lawrence N. Curtis, Lafayette, for Charlene Brasseaux.
Katherine Marie Loos, Lafayette, for Abbeville General Hospital.
Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
The sole issue of this appeal is whether or not the workers' compensation judge erred in finding that a recommended procedure was not a reasonable and necessary treatment for the plaintiff, Charlene Brasseaux. For the following reasons, we reverse and award Brasseaux penalties and attorney's fees.

FACTS
Brasseaux, a DRG coding analyst for Abbeville General Hospital, was injured on May 24, 1993, when she slipped and fell in a hallway of the hospital. X-rays taken of the sacrum and coccyx revealed a displacement of the distal coccygeal segments, which the radiologist felt might or might not be related to acute trauma. Over a period of four years, Brasseaux was treated or examined by seven doctors. Due to her continued complaints of pain in the area of her right sacroiliac joint and right lower extremity, Brasseaux's treating physician, Dr. Paul Hubbell, recommended a trial of spinal cord stimulation to block the pain signal to her brain. Authorization for this treatment was denied by Hospital Services of Louisiana, Inc. (HSLI), Abbeville General's workers' compensation carrier, on April 11, 1994.
On August 29, 1994, Brasseaux filed a disputed claim for compensation against Abbeville General alleging that she was not receiving the recommended medical treatment. Abbeville General and HSLI answered denying her claim, and HSLI filed a request for an independent medical examination. This request was denied by the Office of Workers' Compensation. On January 5, 1996, Abbeville General filed a motion to compel Brasseaux to undergo medical treatment recommended by Dr. Kevin Gorin, or in the alternative, to compel her to submit to a medical examination by Dr. Gerald Nickerson of Lafayette.
Brasseaux amended her disputed claim for compensation on January 31, 1996, alleging HSLI had refused to pay for/and or reimburse her for items prescribed by her treating physician, and it was arbitrary and capricious in failing to pay medical benefits on her behalf. Abbeville General denied these allegations.
In a decision on the motion to compel, rendered on April 10, 1996, the workers' compensation judge ordered an independent medical examination of Brasseaux to be conducted by Dr. James Lafleur, an orthopedic surgeon. In her order, the workers' compensation judge asked Dr. Lafleur to address the reasonableness and necessity of, among other things, a spinal cord stimulator.
Brasseaux was examined by Dr. Lafleur on April 23, 1996. During the examination, he noted that she complained of tenderness to palpation of the right sacroiliac joint, had *342 limited range of motion, and no spasm. She complained of decreased sensation to pinprick on the right thigh anterior aspect, as well as the right leg lateral aspect. The straight leg raising test was positive for low back pain on the right, but Brasseaux said that her back pain was worse when both her hip and her knee were flexed. Dr. Lafleur noted that this was an inconsistent response. He reviewed a lumbar spine series, which was within normal limits, and a sacrum and coccyx view, which revealed some displacement of the distal coccygeal segment, but no acute findings. Dr. Lafleur also reviewed a bone scan, an MRI of the lumbar spine, a lumbar myelogram, and a post-myelographic CT scan, all of which were within normal limits. After reviewing these tests, as well as dictations from nine different doctors,[1] Dr. Lafleur's impression was that Brasseaux was suffering from low back complaints. He felt that she showed no objective signs of nerve root impingement and no sign of disc herniation. Since she complained of pain in her right sacroiliac joint, he ordered a pelvis x-ray, but could find no sacroiliac joint arthrosis. Since she already had an unsuccessful cortisone injection into the sacroiliac joint, he was unsure of any treatment that was available for her. If she had received relief with therapy directed towards her sacroiliac joint, then he felt that this indicated the source of her complaints. Upon receipt of this report, the workers' compensation judge denied Abbeville General's motion to compel.
The issue sub judice was submitted to the workers' compensation judge through medical records and depositions. On June 16, 1997, she issued oral reasons in favor of Abbeville General that the trial implantation of the spinal cord stimulator was not a reasonable and necessary medical treatment. She further held that Abbeville General was not arbitrary and capricious for failing to authorize the procedure, thus, she did not award penalties and attorney's fees. A judgment was signed on June 18, 1997. This appeal followed.

ISSUES
Brasseaux assigns five errors on appeal. Since we find merit in her third assignment of error, that the workers' compensation judge erred in relying on the opinion of an expert, which, by his own admission, was outside of his field of expertise, we will conduct a de novo review of the record. The only other assignment of error that is pertinent to our discussion is whether the workers' compensation judge erred in denying Brasseaux's claim for penalties and attorney's fees.

LAW AND DISCUSSION
Pursuant to La.R.S. 23:1203(A), an employer shall "furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal...." This includes treatment that is necessary to relieve the employee of pain which she suffers as a result of her disability. Gourdon v. Rockwood Ins. Co., 368 So.2d 1156 (La.App. 3 Cir.1979); Barry v. Western Elec. Co., Inc., 485 So.2d 83 (La. App. 2 Cir.), writ denied, 487 So.2d 441 (La.1986). To establish a claim for medical benefits, an employee must show, to a reasonable certainty and by a preponderance of the evidence, that the benefit is occasioned by the work-related accident and is necessary. Alleman v. Fruit of the Loom-Crowley, 96-1246 (La.App. 3 Cir. 3/5/97); 692 So.2d 485. The only issue at bar is whether the recommended medical treatment is necessary.
A finding of whether a particular medical treatment is necessary is a factual determination which will not be reversed in the absence of manifest error, or unless it is clearly wrong. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733; Alleman, 692 So.2d 485. The question on review is not whether the trier of fact was right or wrong but whether the factfinder's conclusion was reasonable, in light of the entire record. Freeman, 630 So.2d 733. Even though a reviewing court may feel that it would have decided the case differently, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed *343 upon review if conflict exists in the testimony. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). This standard of review applies even when the evidence before the workers' compensation judge consists solely of written reports, records, and depositions. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706.
Pursuant to La.R.S. 23:1123, if a dispute arises as to the employee's condition, the workers' compensation judge is allowed to order an independent medical examination by an impartial doctor. That statute further provides that the report of the doctor shall be "prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter." La.R.S. 23:1123. However, even prima facie evidence may be overcome by other credible evidence. Although the legislature has accorded significant weight to the testimony of a court appointed physician, that testimony is not conclusive. The workers' compensation judge must still evaluate the witnesses and reach an ultimate decision in the matter.
The significant weight given to the opinion of the court appointed expert can vary in accordance with the various factors which a trial judge utilizes in evaluating the testimony of any other witness. Thus, the significant weight can be lessor or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians' examinations and tests, and any other relevant factors.
Green v. Louisiana Coca Cola Bottling Co., Ltd., 477 So.2d 904, 906 (La.App. 4 Cir.), writ denied, 478 So.2d 910 (La.1985). See also Menard v. Winn Dixie Louisiana, Inc., 93-1497 (La.App. 3 Cir. 6/1/94); 640 So.2d 775.
In her oral reasons, the workers' compensation judge stated:
As the Barry case which I've just cited points out, the treatment must be reasonable and necessary, and it must be reasonably calculated to provide some relief to the claimant. I've reviewed all of the medical records and reports filed to the record in this case, which were numerous, and the depositions of the various physicians. And the Court's conclusion is that there is nothing in these reports or records or the depositions of the treating physicians which indicate that a spinal cord stimulator is a reasonable and necessary medical treatment.
Specifically, Dr. Hubbell is requesting the spinal cord stimulator. He says he's already tried other modalities and they don't appear to work. However, the defendants had the claimant examined by Dr. Jack Hurst. Dr. Hurst's opinion was that the claimant would be better served by beginning a daily aggressive regiment of self-directed physical therapy, including long-distance walking, bicycle riding, and swimming if she could access same.
He thought that the claimant was a symptom magnifier, which for the most part means malinger. I think that Dr. Jimmy (sic) Cole, Psychologist, who also treated the claimant, was kind of the same opinion. Then because there was a conflict between physicians, the Office of Workers' Compensation selected an IME physician, Dr. James Lafleur. And Dr. Lafleur's opinion was that a spinal cord stimulator should be reserved for inordinate, severe, debilitating problems of which this lady is not a candidate. She does not have that kind of problem. The diagnosis is that she has some spinal cord adhesions, and that is even questionable.
So what the Court is saying is that both the lay testimony and the medical, when viewed together, do not indicate that this lady has the type of problem for which a spinal cord stimulator would be likely to alleviate the pain which she complains of. Additionally, I'd like to point out that Dr. Lafleur, the IME physician, indicated that he thought sympathetic blocks would help her if she had an SI joint problem, which he considered before he did some additional diagnostic testing.
He did the additional diagnostic testing in the nature of a pelvic x-ray. The pelvic x-ray came back within normal limits, did not indicate that there was an SI joint problem. So finally, Dr. Lafleur's opinion was that if the sympathetic blocks are not going to help this lady, which he indicated *344 they would not because there's no SI joint problem, then the spinal cord stimulator is not going to help her either.
The Court has accorded more weight to its own appointed physician, Dr. Lafleur, which the juris prudence (sic) allows it to do. Dr. Lafleur's opinion is given prima facie weight. Without more, the Court can accept it, and the Court also discounts the opinion of Dr. Hubbell, not because the Court doesn't give any weight to his opinion, but his opinion appears to be a last-ditch effort to do something for this lady. He says, "I've tried everything else. There's nothing else to try." But that doesn't necessarily meant that he believes that it is the best and most reasonable treatment for this lady.
After reviewing the record, we conclude that workers' compensation judge accorded too much weight to the opinion of Dr. Lafleur. In ordering the independent medical examination, the workers' compensation judge asked Dr. Lafleur to specifically address the reasonableness and necessity of a spinal cord stimulator. He failed to do so in either his initial report or his addendum.
In his deposition, Dr. Lafleur testified that he did not think that a spinal cord stimulator was medically necessary or reasonable to treat Brasseaux's condition. He felt that a sympathetic block might help her, but, noted that if it failed, a spinal cord stimulator would probably fail too. He opined that a spinal cord stimulator should be reserved for inordinate, severe, debilitating problems such as cancer of the spinal cord or burn injuries involving the lower half of the body. Finally, he stated that he did not believe that there was a spinal cord stimulator that functions for the sacroiliac joint. The workers' compensation judge relied on this testimony in denying Brasseaux's request for a trial of spinal cord stimulator.
However, we find that the workers' compensation judge ignored further testimony from Dr. Lafleur which we find important in determining the weight to be accorded his opinion. Specifically on the issue of a spinal cord stimulator, Dr. Lafleur testified that the implantation of a spinal cord stimulator was under the area of a neurosurgeon and outside of his field of expertise. He stated that he had never considered using nor had he ever surgically implanted a spinal cord stimulator in a patient. If he were considering such a treatment, he stated that he would refer his patient to a neurosurgeon. He further stated that he was not aware of the difference between placement of a trial spinal cord stimulator and implantation of a permanent spinal cord stimulator.
Although a workers' compensation judge is granted considerable leeway in evaluating expert testimony, this does not hold true when the stated reasons of the expert are patently unsound. Menard, 640 So.2d 775. We find that the advice the workers' compensation judge relied on was patently unsound, because it concerned an area outside of Dr. Lafleur's field of expertise. Since we find that the workers' compensation judge erred in relying on Dr. Lafleur's opinion to deny Brasseaux's claim, we will now conduct a de novo review of the record to determine whether a trial of spinal cord stimulation is necessary medical treatment.
Following her injury, Brasseaux was treated or evaluated by seven different doctors, including an orthopedic surgeon, a neurologist, anesthesiologists or pain specialists, a physiatrist, and a psychologist. She consistently complained of pain in her right sacroiliac joint region, right buttock, and pain and weakness in her right lower extremity, and to a lesser degree her left. Her straight leg raise test consistently was positive for low back pain on the right side. Brasseaux underwent numerous diagnostic tests, including a bone scan, an MRI of the lumbar spine, two EMG and nerve conduction studies, an epidurogram, a myelogram, and a post-myelogram lumbar CT scan. The first nerve conduction study revealed a mild prolongation of the common peroneal motor distal latencies, and the epidurogram revealed a non-filling area of contrast around the S1 nerve root.[2] Otherwise, all other tests were within the normal *345 limits. As a result of the epidurogram, Brasseaux underwent three Racz procedures to lyse or dissolve the adhesions located around the right S1 nerve root, from which she received minimal relief.
Brasseaux also endured numerous injections in an effort to reduce her level of pain. A CT guided sacroiliac joint injection, an injection of her trochanteric bursa, a lumbar facet joint injection, an epidural steroid injection, a caudal epidural steroid injection, and the insertion of a continuous epidural catheter. Although she received limited relief from these injections, none provided her with long-term relief. She has tried physical therapy on several different occasions but has always had to stop because of the pain it caused her.
Diagnosis from the doctors included sacroiliac joint pain syndrome, soft tissue pain, sympathetic maintained pain bilateral, reflex sympathetic dystrophy or sympathetic maintained pain in the right lower extremity, epidural adhesions of the right S1 nerve root, S1 radiculopathy of the right side, and right lower extremity sympathetic-maintained pain. Recommendations for Brasseaux's treatment included the trial implantation of the spinal cord stimulator, aggressive physical therapy, completion of a coping skills development program, further sacroiliac joint injections, and being weaned off narcotic drugs.
HSLI had Brasseaux evaluated by two other doctors. She was seen by Dr. Jack Hurst, a neurologist, for evaluation on March 30, 1994. He could detect no focal motor or lateralizing neurologic signs in Brasseaux. Her seated straight and supine straight leg raise on the left and right caused right low back pain, but no radicular distribution of pain or paresthesia. Palpation of the sacroiliac junction and slightly in the trochanteric bursa caused pain. Dr. Hurst reported that strength testing was questionably 5/5 in all muscle groups, but stated that Brasseaux demonstrated cogwheel and breakaway maneuvers bilaterally. Thus, he found her clinical presentation suspicious. With regard to the recommendation for a spinal cord stimulator, Dr. Hurst stated:
... I UNEQUIVOCALLY disagree. It is my considered opinion that this lady has had way more medical treatment than is necessary for a constellation of magnified, non-neurologic, and physiologic symptoms. She would be better served by beginning a daily, aggressive regimen of self-directed physical therapy including long-distance walking, bicycle riding, swimming if she can access same.
HSLI denied authorization for the trial spinal cord stimulation following this examination.
Brasseaux was seen by Dr. Kevin Gorin, of the Pain Management Institute of Lake Charles Memorial Hospital, on March 27, 1995. Dr. Gorin found no objective evidence of any lumbosacral radiculopathy, sympathetically maintained, or complex regional pain syndrome. However, he found clear evidence of learned pain behavior and major depression, and determined that she suffered from right sacroiliac joint dysfunction. Dr. Gorin felt that Brasseaux would benefit from enrollment in a comprehensive pain management and rehabilitation program, involving physical therapy and neuropsychological support. He found no objective evidence for continuing sacroiliac joint injections or for a trial implantation of a spinal cord stimulator.
Dr. Gorin reevaluated Brasseaux on May 5, 1995. She continued to suffer from effects of a right pyriformis muscle syndrome with evidence of an underlying right sacroiliac joint dysfunction. She still displayed signs of major depression and learned pain behavior. However, Dr. Gorin did feel that she was suffering the pain she complained of. Dr. Gorin injected a major trigger point in the right pyriformis muscle region which reduced Brasseaux's pain for one to two days. Another injection was made to the same area with the same result. On August 11, 1995, Dr. Gorin recommended that Brasseaux be admitted for a comprehensive impatient pain management and rehabilitation program.
Dr. Hubbell, a pain specialist, testified that he recommended Brasseaux undergo a trial of spinal cord stimulator based on a finding that she had fibrosis in the area of the S1 nerve root. He based this diagnosis on her positive straight leg raise test and the results *346 of the epidurogram, which showed a lack of contrast filling in the area of the S1 nerve root. An epidurogram injects contrast dye outside of the dura separating the spinal column and cerebral spinal fluid from the epidural space. Dr. Hubbell opined that Brasseaux developed fibrosis from an infection she suffered near her sacral coccygeal area as a result of her fall. This infection caused the development of scar tissue which was tethering the S1 nerve root and causing Brasseaux's radicular pain. Dr. Hubbell testified that Brasseaux will continue to have sacroiliac pain as long as the S1 nerve root is tethered by the fibrosis. He stated that he did not want to subject her to a sacroiliac joint block since it would provide her with no more than short-term relief.
Based on his diagnosis, Dr. Hubbell testified that the best treatment for Brasseaux's condition was the trial implantation of a spinal cord stimulator. This procedure requires placement of an epidural electrode into the epidural space while the patient is awake to identify whether pain relief is achieved. If relief occurs, the patient undergoes physical therapy with the electrode attached percutaneously to a small pager like box. If the trial reduced Brasseaux's pain by sixty percent, then Dr. Hubbell would implant a permanent spinal cord stimulator. He stated that this device treats the pain instead of the source of the pain. With regard to the recommendations of Drs. Gorin and Dwight Lemoine,[3] Dr. Hubbell testified that he had performed sacroiliac injections on Brasseaux without improvement. He agreed that she would require a significant physical rehabilitation program, but only after her pain was reduced.
Dr. Robert White, a physiatrist, testified that his initial diagnosis of Brasseaux was epidural adhesions secondary to epidural abscess, post fracture of the coccyx, and lumbar radiculopathy. He found her to be a good candidate for a spinal cord stimulator. Dr. White prescribed physical therapy, however, it was stopped due to her complaints of pain. Dr. White noted a reference from a textbook, which stated:
A spinal cord stimulator system should be considered for patients who have failed all reasonable conservative care, including appropriate diagnostic, therapeutic, and rehabilitative techniques, and have been given a reasonable period of time to recover, usually longer than one year.
TED A. LENNARD, PHYSIATRIC PROCEDURES IN CLINICAL PRACTICE, 1995.
Dr. White felt that Brasseaux met all of these criteria since all conservative measures had been attempted and failed. He also stated that it is "quite well-recognized that for a patient with this particular condition and presentation and history, the next logical step is a trial of a spinal cord stimulator."
When questioned, Dr. White did not find it inconsistent that Brasseaux's complaints were located on the right side and the epidurogram showed no filling of the nerve root sheath on the left side. He testified that although perineural fibrosis was shown on the left, it did not mean that the right side was free of adhesions. In fact, Dr. White felt that Brasseaux had adhesions on the right side which had not yet been discovered. With regard to Dr. Lafleur's impression that Brasseaux suffered from low back complaints, Dr. White found this diagnosis broad and vague, and more in the nature of a chief complaint. He further found that Dr. Lafleur did not mention anything about epidural adhesions or perineural fibrosis.
Dr. Lafleur testified that he did not read the report of the epidurogram and added that he did not think the procedure was necessary to diagnose or treat Brasseaux's condition. However, he admitted that he had never utilized or interpreted an epidurogram. When asked if he agreed with Dr. Hubbell's diagnosis of epidural adhesions, Dr. Lafleur stated that he thought that condition occurs or might occur in a person after they had a surgical approach to the area. However, he stated that he was unfamiliar with Dr. Hubbell's explanation that Brasseaux had suffered *347 a draining fistula in the area of the coccyx, which could have resulted in scarring in that area. He further admitted that he did not know how to diagnose epidural adhesions and was unsure of the symptoms a patient would exhibit if suffering from them.
Based on the preceding testimony and the medical records in evidence, we find that the trial implantation of a spinal cord stimulator is a necessary medical procedure. The evidence has proven that Brasseaux has suffered severe chronic pain for four years since her work-related accident. She is entitled to treatment which is necessary to relieve the pain she suffers as a result of her disability. Menard v. Multi-Service Corp., 546 So.2d 952 (La.App. 3 Cir.1989). Drs. Hubbell and White both felt that Brasseaux was a candidate for a spinal cord stimulator. Even Dr. Lemoine stated that she would be a candidate if she were weaned off narcotic medications, and still had the same level of pain after undergoing further sacroiliac joint injections and aggressive physical therapy. Since she has already undergone numerous injections and physical therapy without success, we do not think she should be subjected to them again before the spinal cord stimulation can be authorized. Drs. Hubbell, White, and Lemoine were the only doctors who have actually used spinal cord stimulation in their practices. Thus, we find their opinions persuasive. Accordingly, we find that the trial implantion of a spinal cord stimulator is a necessary medical treatment for Brasseaux.

PENALTIES AND ATTORNEY'S FEES
In her fifth assignment of error, Brasseaux argues that the workers' compensation judge erred in denying her claim for penalties and attorney's fees. We agree. Abbeville General refused to authorize the trial spinal cord stimulator based on the limited examination of Dr. Hurst in March 1994. Brasseaux continued suffering debilitating pain for three years following this examination, and was found to be a candidate for spinal cord stimulation by Drs. Hubbell, White, and Dwight Lemoine. We discount Dr. Lafleur's opinion for the reasons stated.
As stated above, Brasseaux is entitled to medical treatment which is necessary to relieve her pain, even if such treatment is a "last-ditch" effort. Thus, we find that Abbeville General was arbitrary and capricious for refusing to authorize the trial spinal cord stimulator, especially in view of the fact that it continued to rely on Dr. Hurst's opinion, even in the face of Brasseaux's continued suffering and determinations by Drs. Lemoine and White that a trial of spinal cord stimulation was appropriate. We further find that Abbeville General was arbitrary and capricious by attempting to coerce Brasseaux into being treated by a physician of its own choosing, Dr. Gorin. City of Jennings Police Dept. v. Dorr, 96-244 (La.App. 3 Cir. 6/26/96); 676 So.2d 1128. As a result of these findings, we award penalties of $2,000.00 and attorney's fees of $5,000.00 to Brasseaux. La.R.S. 23:1201.

CONCLUSION
For the foregoing reasons, we vacate the judgment of the workers' compensation judge, and find that the trial of spinal cord stimulation is a reasonable and necessary medical treatment. We further award the plaintiff-appellant, Charlene Brasseaux, attorney's fees of $5,000.00 and cast the defendant-appellee, Abbeville General Hospital, with penalties of $2,000.00. The costs of this matter at the trial level and on appeal are assessed to Abbeville General Hospital.
REVERSED AND RENDERED.
NOTES
[1] Drs. Bohn, Santic, Leoni, deAlvare, Larriviere, Shafie, Gorin, Hubbell, and Hurst.
[2] Although Dr. Hubbell's records show that the non-filling area of contrast was around the right S1 nerve root, a report by Dr. David Jewell states that there was poor filling of the nerve root on the left in the lower sacral plexus.
[3] Dr. Lemoine recommended that she first be weaned from her narcotic medication and then undergo further sacroiliac joint injections and three to four weeks of aggressive physical therapy. If she still had the same amount of pain, then he felt she would be a candidate for a trial of spinal cord stimulation.