h JONES, Judge.
Defendants/appellants, Universal Services, Inc., and its worker’s compensation carrier, Alaska National Insurance Company (collectively referred to as Universal), appeal the judgment of the Worker’s Compensation Judge (WCJ), which found the plaintiff, Leon Charles, temporarily and totally disabled. Universal also appeals the WCJ’s award of penalties and attorney’s fees. Mr. Charles, pro se, also appeals the judgment, arguing that the WCJ lacked subject matter jurisdiction in light of the Longshore and Harbor Workers’ Compensation Act. Upon review of the record, we reverse the judgment of the WCJ, and dismiss the claim.
FACTS
On May 29, 1997, Mr. Charles injured his back and ribs when he fell on a concrete floor from the back of a forklift at the Universal Services’ facility in Harahan, Louisiana. Following the accident, Mr. Charles’ X-rays revealed that he suffered from two broken ribs and had pain in his neck and back. He was then placed on “no duty” status for two weeks and was subsequently placed on “light 1 ¡.duty” status on June 16, 1997. After returning to light duty work at Universal, Mr. Charles began complaining of consistent back pain, whereupon Universal recommended that he submit to a physical examination by one of its orthopedic surgeons, Dr. Robert Steiner. Following the examination, Dr. Steiner concluded that Mr. Charles was fit to return to his regular work detail at Universal. Despite Dr. Steiner’s diagnosis, Mr. Charles requested authorization to schedule an appointment with Dr. Bernard Manale, an orthopedic surgeon Mr. Charles selected to diagnose his injuries. Following Dr. Manale’s examination, Mr. Charles was again found to be capable of returning to work.
Shortly thereafter, Mr. Charles voluntarily terminated his employment in September 1997, because of the difficulty he was having doing the light-duty work Universal assigned to him. In November 1997, Dr. Steiner re-evaluated Mr. Charles and maintained his original diagnosis. However, in February 1998, when Dr. Ma-nale re-evaluated Mr. Charles he indicated that the Claimant was totally and permanently disabled — despite finding no change in his physical condition.
Considering the conflicting diagnoses from Drs. Steiner and Manale, Universal requested the WCJ to appoint an Independent Medical Examiner to resolve the issue of whether Mr. Charles was able to return to work. The WCJ granted Universal’s request and appointed Dr. John *773 Lee Moss, an orthopedic surgeon, to conduct the examination. On April 12, 1998, Dr. Moss declared that Mr. Charles was capable of returning to his regular job duties with no restrictions.
|3In November 1998, a trial was held regarding whether Mr. Charles was disabled from his May 1997 accident. After all testimony, exhibits and depositions had been admitted into the record, the WCJ rendered judgment in favor of Mr. Charles, finding him temporarily and totally disabled as a result of his job-related injury. The WCJ awarded worker’s compensation benefits in the amount of $254.57 per week, plus interest, beginning September 23,1997. The court further found that Universal had failed to provide a reasonable basis for not paying benefits in the amount of $153.99 to the claimant, which both parties had stipulated was due to Mr. Charles prior to trial. In light of Universal’s failure to pay Mr. Charles this amount, the WCJ ordered Universal to pay penalties in the maximum amount of $50.00 per day, not to exceed $2,000 or 12% of the back due amount, whichever is greater. The WCJ also awarded Mr. Charles attorney’s fees in the amount of $4,000. It is from this judgment that Universal filed the instant appeal.

JURISDICTION

Mr. Charles filed a Motion to Appeal the judgment on the grounds that the WCJ lacked subject matter jurisdiction. He argues that the case should have been brought in federal court under the Longshoreman and Harbor Workers Compensation Act (LHWCA).
In rebuttal, Universal argues that the record before this Court is void of any factual or legal basis for finding that the WCJ lacked subject matter jurisdiction. Universal also argues that in order for Mr. Charles to fall within the jurisdiction of the LHWCA, he must satisfy the “situs” requirement. In other words, the claimant |4must establish that his injuries occurred on or adjacent to a navigable body of water. The only job requirement Mr. Charles had with Universal was the loading of groceries and supplies onto Universal’s trucks and then transporting those goods from a Universal facility in Harahan to another location. Further, Universal argues that Mr. Charles’ assignment of error lacked merit because none of its facilities were near a navigable body of water. We agree.
The Fifth Circuit, U.S. Court of Appeals, requires both “situs” and “status” for any claimant seeking to be eligible to bring suit under the LHWCA. See 33 U.S.C.A. § 903 et seq. In light of Chesapeake & Ohio Railway Co. v. Schwalb, 493 U.S. 40, 110 S.Ct. 381, 107 L.Ed.2d 278 (1989), Mr. Charles requests that this Court find he satisfied the “status” requirement because he was loading trucks less than three miles from the Mississippi River when the accident occurred. In Schalb, the U.S. Supreme Court found that maintenance employees who were injured while repairing loading equipment that was essential to the loading/unloading of ships would be eligible under the LHWCA. In finding coverage for these employees, the Supreme Court also had to determine whether said employees were engaged in maritime employment. The Supreme Court stated:
In the course of considerable litigation, including several cases in this Court, it has been clearly decided that, aside from the specified occupations, land-based activity occurring within the § 903 situs will be deemed maritime only if it is an integral paH or essential part of the loading or unloading of a vessel. This is a sensible construction of § 902(3) when read together with § 903(a), particularly in light of the purpose of the 1972 amendments to the LHWCA, which produced those sections. (Emphasis added).
More particularly, the court went on to outline what occupations the LHWCA consider maritime employment for purposes of the receiving benefits.
*774 IsExcept as otherwise provided in this section, compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel). See 33 U.S.C.A. 903(a).
Though we agree with Mr. Charles argument that land-based activities are also covered under the LHWCA, we do note, however, that his particular work description would not fall within the boundaries of the statutory intent of the LHWCA.
The Sixth Circuit, U.S. Court of Appeals, further expounded on this issue in Stowers v. Consolidated Rail Corp., 985 F.2d 292 (6th Cir.1993), cert. denied 510 U.S. 813, 114 S.Ct. 61, 126 L.Ed.2d 31 (1993). In Stowers, the reviewing court did not allow recovery under the LHWCA for a railway worker who was positioning boxcars of coal at dockside to be loaded by conveyor belt into holds of ships because the worker was not engaged in maritime employment. Id. at 297. (Emphasis ours). The designation “maritime employment,” although construed broadly by the court, was found to clearly mean “persons whose employment is such that they spend at least some of their time in [performing] longshoring operations.” Northeast Marine Terminal Co., Inc. v. Caputo, 432 U.S. 249, 273, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). Having found that Mr. Charles’ duties do not fall within the meaning of maritime employment, we find his assignment of error that the WCJ did not have subject matter jurisdiction to hear this case to be without merit.
| MEDICAL FINDINGS
In this assignment of error, Universal argues that the WCJ erred in disregarding the finding of the Independent Medical Examiner (IME) that Mr. Charles could return to work by concluding that he was temporarily and totally disabled. Universal also argues that the record indicates that the physician who found Mr. Charles unable to return to work relied heavily on Mr. Charles’ statements rather than on objective medical tests and examinations.[1] Further, Universal contends that the Functional Capacity Evaluation (FCE) revealed that Mr. Charles was a. “symptom magnifier.” Therefore, Universal argues that the WCJ should have accepted the findings of the IME and rendered judgment in favor of Universal. Again, we agree.
Dr. Manale[2] testified that Mr. Charles’ condition was an aggravation of a preexisting injury he had while in the U.S. Army. Initially, Dr. Manale found that Mr. Charles was capable of returning to light-duty work provided that his new positions did not require him to have prolonged periods of stooping, crawling, standing, sitting, bending or working at extreme height or in confined places. After Mr. Charles continued to complain that he was having difficulty doing light-duty work, Dr. Ma-nale decided to re-classify him as disabled. Dr. Manale testified that he made his decision despite the fact that the physician who conducted Mr. Charles’ FCE test believed that the results would prove to be invalid because Mr. Charles was putting forth submaximal or below normal effort. The record also reflects that despite numerous office visits, Dr. Manale was not aware of the type of work Mr. Charles did. Moreover, the restrictions Dr. Manale placed on Mr. |7Charles’ light-duty work were not reduced to writing and were not placed in Mr. Charles’ medical records.
As it relates to Dr. Manale’s decision to classify Mr. Charles as disabled, we find that the record does reflect that Dr. Ma- *775 nale’s decision primarily resulted from his conversations with the Claimant. The record provides the following colloquy between Dr. Manale and the attorney for Universal during discovery:
Q. At what point in time did your opinion change as to Mr. Charles’ ability to work?
A. On February 23 rd, 1998, it looks like something changed.
Q. Like what changed?
A. Well, he told me that he was on light duty warehouse, but he couldn’t continue with whatever that light duty was and, I’m sorry, I don’t know exactly what he was or was not doing. He told me that he didn’t think he could work as a truck driver and he described some of the job. I remember he even drew me a little picture. He was standing inside of like a box of some sort and picking up objects and he told me that he could [not] do that.
I didn’t know what to do with the man. I thought that since he had been trying to do light duty work and was unable to continue, considering all the pathology he had, I would just make him disabled.
Q. I see in your February 23, 1998, record that Mr. Charles reported to you that he didn’t think that he could work at all as a truck driver.
A. That’s right.
Q. That’s correct?
A. Yes, sir.
Q. Is it for that reason you put him on total permanent disability status?
A. Well, that and the fact that it had been nine months |ssince the injury and I didn’t think I could fix him so that I could cure him. In other words, I didn’t have a way to get him back to regular duty, so I figured at nine months with no hope of improving for the next three months, he would be permanently disabled.
jfc Hí ❖ sfc %
Q. Doctor, when a patient tells [you] about his pain and his symptoms and his test or his performance is not true, your opinion concerning his physical capabilities may be incorrect; is that a fair statement?
A. That’s a fair statement. I have to rely on my patients. If they lie to me, I’m doomed.
(Emphasis ours).
Mr. Charles testified that he informed his supervisor that he was not able to do light duty work. However, on cross-examination, he conceded that the supervisor he was referring to during direct examination was his former supervisor in the trucking department, not the supervisor over his light-duty detail.
Dr. John Lee Moss, the orthopedic surgeon appointed by the WCJ, testified that Mr. Charles was capable of returning to his regular employment because there were no objective findings of the patient’s disability. Dr. Moss also testified that the FCE test indicated that Mr. Charles was a “symptom magnifier.” Because Mr. Charles did not put forth the maximum effort during the FCE test, Dr. Moss opined that Mr. Charles had reach the maximum treatment for his ribs, neck and back. Dr. Moss further testified that he declined to place any weight to what the patient stated to him because of the patient’s FCE results.
Even though Dr. Moss admitted that he examined Mr. Charles for only twenty minutes, he maintained that his diagnosis would still be the same if he met with Charles on a regular basis because his diagnosis took into consideration the | oClaimant’s medical history, the previous diagnoses, and record notations from his previous doctors. In essence, Dr. Moss testified that after nine months of medication, physical therapy and consistent exercises, Mr. Charles should have been able to show more improvement during the FCE than what was indicated. Further, *776 Dr. Moss testified that if Mr. Charles medical history and records were accurate then he should be capable of returning to work.
Pursuant to LSA-R.S. 23:112, if a dispute arises as to the employee’s condition, the worker’s compensation judge is allowed to order an independent medical examination by an impartial doctor, and the report from such examination shall be “prima facie” evidence of the facts therein stated in any subsequent proceedings under this Chapter. See Brasseaux v. Abbe-ville General Hosp., 97-1062 (La.App. 3 Cir. 3/18/98), 710 So.2d 340, writ granted in part on other grounds, reversed in part, 98-1066 (La.6/5/98), 720 So.2d 673. Although significant weight is given to the finding of the IME, his testimony is not conclusive in itself. Id. at 343. The worker’s compensation judge must also give weight to the [IME’s] qualifications, expertise, type of examination, and opportunity to view the patient’s examinations and other tests. Id. Nevertheless, the WCJ must not discount the IME’s findings on patently unsound reasoning.
In the case sub judice, we find Dr. Ma-nale’s explanation for disregarding Mr. Charles’ medical records and classifying him as disabled was indeed error. Dr. Manale’s decision to withdraw the Claimant from the workforce was merely because the Claimant stated that he was not able to work any longer as a truck driver — even though none of these complaints were made to his immediate supervisors. In fact, the record states that Mr. Charles arbitrarily terminated his employment without giving notice to his employer or his treating physician. 110Notwithstanding the Claimant’s exaggeration of pain and discomfort, the record reflects that Mr. Charles was not completely truthful with regard to his educational background and medical history.
Therefore, we find that the WCJ’s reliance on Dr. Manale’s testimony to be manifest error; thus, we hereby reverse the judgment of the WCJ. However, because Universal stipulated prior to trial that Mr. Charles was due $153.99 for back-due benefits, we hereby order Universal to pay this amount to the Claimant immediately.

DECREE

For the foregoing reasons, except for the stipulated amount of $153.99 owed Leon Charles, the judgment of the worker’s Compensation Judge is reversed. All costs are assessed to Universal Services, Inc.

REVERSED.

. Mr. Charles' pro se brief does not discuss this issue.

. All experts testified by depositions in lieu of live testimony.