hGREMILLION, Judge.
In this complex workers’ compensation case, the defendant, Jo Anna Dorr, appeals the judgment of the workers’ compensation judge finding that the treatment by her treating physician, Dr. Donald Harper, was neither reasonable nor necessary and that the plaintiff, the City of Jennings Police Department (Jennings), was no longer responsible for that treatment. We reverse and render judgment in favor of Dorr.
FACTS
Dorr, a detective with Jennings, suffered a work-related injury in May 1987, and was adjudged permanently and totally disabled in 1991. In 1993, Jennings filed a disputed claim with the Office of Workers’ Compensation alleging that it had terminated Dorr’s benefits because she refused to be examined and treated by a physician of its choice. Dorr contested Jennings’ claim, arguing that, although it |2could have her examined, it could not compel her to be treated by its physician. This matter was later settled and an ex parte judgment of dismissal was submitted by Jennings. This judgment was later vacated as an invalid judgment at the request of Dorr, who was awarded attorney’s fees. City of Jennings Police Dep’t. v. Dorr, 96-244 (La.App. 3 Cir. 6/26/96); 676 So.2d 1128.
The present appeal arises from a disputed claim for compensation filed by Jennings on December 3, 1997, alleging that the medical treatment administered to Dorr by Dr. Harper is unreasonable and unnecessary. Dr. Harper has been treating Dorr’s chronic pain with time-release and immediate-release morphine sulfate since 1992. Jennings requested an independent medical evaluation and then filed a motion to compel Dorr to attend a physical examination by Dr. Adrian Blotner, a psychiatrist. Dorr answered Jennings’ claim, arguing:
The employee has been declared totally and permanently disabled and has been undergoing the same medical treatment regimen for her chronic condition (failed back syndrome) for many years. The Employer/Carrier is now claiming that this treatment, which is one of the legitimate treatment options available to the treating physician selected by the Employee, is not reasonable and necessary. This is simply another in a series of attempts by the Employer/Carrier to compel the Employee to submit to medical treatment by a physician chosen by the Employee/Carrier. The Employee is therefore entitled to attorney’s fees and penalties.
The workers’ compensation judge denied Jennings’ motion to compel the examination by Dr. Blotner but ordered an independent medical examination by Dr. Robert Franklin, a physiatrist.
Following a hearing on the merits, the workers’ compensation judge held that Dr. Harper’s treatment was neither reasonable nor necessary and that Jennings was no longer responsible for this treatment. Subsequently, Dorr moved for a |,-¡suspensive appeal and sought a stay of the judgment pending this appeal based on affidavits submitted by Drs. Harper and Franklin stating that an abrupt discontinuance of morphine treatment could result in severe abstinence syndrome, including cardiovascular collapse, and would likely result in severe depression which could also be life threatening. The workers’ compensation judge granted Dorr a suspensive appeal without the payment of costs but refused to stay the judgment pending this appeal.
ISSUES
On appeal, Dorr has assigned three errors committed by the workers’ compensation judge:
1) The workers’ compensation judge erred with regard to her findings regarding Dr. Harper’s exercise of professional medical judgment, which *369 are not supported by competent evidence in the record.
2) The workers’ compensation judge erred in holding that Jennings is not responsible for any treatment provided by Dr. Harper, her choice of physician.
3) The workers’ compensation judge erred in refusing to award penalties and attorney’s fees.
LAW
La.R.S. 23:1203(A) mandates that an “employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal.... ” Necessary medical treatment includes palliative treatment necessary to relieve an employee of the pain she suffers as a result of her disability as well as that designed to cure her work-related injury. Brasseaux v. Abbeville Gen. Hosp., 97-1062 (La.App. 3 Cir. 3/18/98); 710 So.2d 340, writ granted in part and denied in part, 98-1066 (La.6/5/98); 720 So.2d 673; Ferrier v. Jordache-Ditto’s, 94-1317, 94-1318 (La.App. 3 Cir. 5/17/95); 662 So.2d 14, writ denied, 95-2865 (La.2/2/96); 666 So.2d 1100.
The workers’ compensation judge’s finding as to whether a particular medical treatment is necessary is factual in nature and will not be disturbed on review in the absence of manifest error or unless it is clearly wrong. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733. Accordingly, the issue on review is not whether the trier of fact was right or wrong but whether its conclusion was reasonable in light of the entire record. Id. Even though a reviewing court feels that it would have decided the case differently, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed upon review if conflict exists in the testimony. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). The manifest error standard applies even when the evidence consists of written reports, records, and depositions. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706.
NECESSARY TREATMENT
In her first assignment of error, Dorr argues that the workers’ compensation judge erred in making findings which are not supported by competent evidence regarding Dr. Harper’s exercise of professional medical judgment. She contends that when an employer questions the reasonableness and necessity of medical treatment prescribed for an employee, the employer is, in essence, questioning whether the prescribing physician has breached the applicable standard of care. However, since the applicable standard under the Workers’ Compensation |sAct is whether the treatment is necessary, we will address Dorr’s assignment under that standard.
In support of its claim, Jennings submitted a report by Dr. Blotner, who performed a case review of Dorr’s medical records. After reviewing her records through 1997, most of which are not in the record, he arrived at a diagnostic impression:
Axis I. 1. Narcotic abuse and dependence
2.Mood disorder due to narcotic dependence.
Axis II. Rule out mixed personality disorder.
Axis III. 1. Orthodpedic history of chronic pain and lumbar surgeries, as noted above.
2. Status post thyroidectomy.
3. Status post total abdominal hysterectomy.
4. Status post appendectomy.
5. Status post cholecystectomy.
6. Long history of migraine headaches reported since the age of 15 years old.
7. Past history of breast cysts — benign, noted as above.
8. Obesity.
*370 Axis IV. Current stressors appear to be mostly based on her medical condition. There are no other significant stressors described in the psychiatric record as reviewed above.
Axis V. GAF is estimated to be 60 based on the description in the medical record noted above.
Dr. Blotner prefaced his discussion by stating that Dorr’s case was complex and difficult. Recognizing her physical limitations, he felt that her condition was consistent with his experience in the area of pain management, in that the daily use of narcotics served to maintain and amplify pain over time. He further stated that it served to worsen sleep disturbance, impaired energy, impaired concentration and memory, irritability, mood swings, depressed mood, anxiety, restless leg syndrome, muscle tension and spasm, and headaches, all which he said continued to plague Dorr.
Dr. Blotner opined that the best way to treat patients with similar type |6orthopedic conditions was through a combination of “so-called ‘antidepressants,’ an-ticonvulsants, non-habit-forming muscle relaxers, and non-habit-forming analgesic medications.” He further stated that she might require non-habit-forming medications for the relief of her vascular headaches.[1] Dr. Blotner expounded:
With the positive benefits of these medications, it is my experience that all patients with conditions similar to that of Ms. Dorr will improve, if they will cooperate with gradual reduction and discontinuation of narcotic pain medication. The level of improvement is routinely surprising to the patients themselves, who only envision the short term worsening of pain associated with detox. The patient in Ms. Dorr’s position is unable to visualize the benefits of successfully accomplishing reduction and discontinuation of narcotics, due to the addictive nature of these medications, in my opinion. I have no doubt that Ms. Dorr suffers from “real” physical pain. The question here is about the medication management strategy which will be most effectdive (sic) for that physical pain, as well as any emotional suffering.
The next issue has to do with the non-medication aspects of behavior, cognition, emotions, personality patterns (which are not affected by medication), and social support system. In this area, Ms. Dorr has been resistant to cooperate with treatment recommendations by myself as well as other physicians, as noted above. It certainly appears that Ms. Dorr has been offered several attempts at “pain management” with compassionate and comprehensive care being offered. It is my opinion that it is Ms. Dorr’s treatment resistance to cooperating with non-surgical physical, medication, and psychiatric treatment which has maintained her condition as it is. That is, if Ms. Dorr was more cooperative with the appropriate use of the medications I have recommended above, along with gradual reduction and discontinuation of pain medication, I believe that the treatment outcome would be significantly better than it is right now. In that sense, Ms. Dorr has some responsibility for the choices that she has made over the last 10 years.
Dr. Kevin Goran, a specialist in physical medicine and rehabilitation, examined Dorr at Jennings’ request on January 31, 1994. In his 1994 deposition, he diagnosed Dorr with three conditions: major depression, failed back syndrome, and chronic pain syndrome. Although he felt that Dorr’s immediate problem was |7depression and chronic pain, he identified her main problem as her excessive use and increasing dependency on prescription narcotic medication. Dr. Goran’s initial recommendation for treatment was acute prescription drug detoxification on an inpatient basis with the multi-disciplinary integrated pain management group he was *371 associated with in Lake Charles, Louisiana.
Dr. Goran explained that a patient will develop a tolerance for morphine, requiring higher doses in order to achieve pain relief. He testified that the most significant side effects of prolonged morphine use involved the respiratory and gastrointestinal system, and could lead to respiratory depression, or the loss of drive to breath, upset stomach, constipation, tremendous slowing of the bowel, and even bowel obstruction. In stating that morphine is a known systemic depressant, Dr. Goran felt that there was a relationship between Dorr’s depression and her use of morphine. He explained that Dorr’s dosage of morphine sulfate, one hundred and eighty milligrams every eight hours, is usually reserved for chronically or terminally ill cancer patients. Although he agreed that there was support in medical literature for long-term treatment of chronic pain in certain cases with high doses of morphine sulfate, Dr. Goran indicated that it was not accepted by the entire medical community. While admitting that Dr. Harper was exercising an available treatment option within the exercise of his professional judgment, Dr. Goran stated that the “standard of medical care does not dictate providing exceedingly or increasing larger dosage of morphine sulfate to a forty-one year old female, okay, with no terminal with no known terminal disease.” He opined that this was not an appropriate or reasonable treatment regimen for this patient.
|sDr. Franklin, who performed the independent medical examination of Dorr on July 31,1998, stated in his report:
ASSESSMENT:
1) Status post multiple lumbar surgeries with multilevel fusions.
2) Chronic low back pain of more likely than not several etiologies.
8) History of depression and psychiatric disorders.
4) Edema in the distal lower extremities bilaterally.
PLAN: Ms. Dorr needs fresh workup. I suggest a lumbar MRI scan with contrast at this time. This would give us a better idea of what we are dealing with in underlying structures. I suggest an addictionologist evaluation for chronic use of MS Contin, and hopefully taper her from the MS Contin. I recommend longstanding non-steroidal anti-inflam-matants, antispasmodics, and antidepressants for her. She weighs 230 lbs, and she needs weight loss. I suggest a lumbar corset as well. A posture bra might help her lumbar condition. Routine follow up visits by a psychiatrist to help monitor her psychiatric situation and medication adjustments would probably help her as well.
Dr. Harper, a neurologist and diplomat of the American Academy of Pain Management, began treating Dorr in April 1992, after she was referred to him for evaluation of her chronic pain syndrome. His evidence consists of his October 1994 deposition, medical records through May 1998, and a 1998 report. This evidence reveals that he mainly treated Dorr’s chronic pain with two types of morphine sulfate: MS Contin, a time-release morphine, and MSIR, an immediate-release morphine.
Dr. Harper first began treating Dorr with MS Contin in June 1992 and MSIR in October 1992.[2] His initial prescription was fifteen milligrams of MS Contin, Lone or two every eight hours for pain. In Octo *372 ber 1992, he added fifteen milligrams of MSIR to Dorr’s prescription medication to be taken on an as-needed basis. By May 1998, the dosage of MS Contin had increased to four hundred milligrams four times a day. Dr. Harper attempted once to switch Dorr from MS Contin to Ora-morph SR, a cheaper brand of morphine sulfate, but returned her to MS Contin because she could not tolerate it. On March 25, 1993, Dr. Harper noted that Dorr had met with Dr. William Cloyd, her psychiatrist, and discussed the confusion over her obtaining pain medication from both Dr. Harper and Dr. Thomas Whitec-loud, her orthopedic surgeon. He stated that Dr. Cloyd felt that this was a genuine error on her part and discussed with her in detail drug dependency and addiction. Both Drs. Cloyd and Whitecloud recommended that Dr. Harper alone handle her pain medication.
In addition to her scheduled appointments, Dorr called Dr. Harper between appointments to request medication. Since prescriptions for morphine sulfate must be in writing, Dr. Harper stated that he monitored Dorr’s prescriptions and would not let her have medication before it was due unless she had a good reason. He would give her a prescription early if she planned to be out of town when it was supposed to be refilled. On many occasions she used up her medication early due to vomiting caused by her migraine headaches. Dr. Harper’s records show that Dorr went to the emergency room of Our Lady of Lourdes Medical Center on March 12, May 7, July 9, October 1, and November 5, 1995, as a result of migraine headaches. In April 1994, Dr. Harper had her sign an agreement not to use illegal drugs and ordered a random drug screen, which was negative for illicit drugs. I^Another urine drug screen was performed in October 1995, which was negative, and she signed an “Informed Consent” on December 5, 1997, stating that she was not using illicit drugs, was not diverting her medications, and she agreed to submit to drug testing when requested to by Dr. Harper.
Dr. Harper testified that Dorr’s condition fit within the classification of chronic intractable benign pain syndrome, for which the prognosis is generally poor. He did not believe that Dorr’s pain would disappear if she were detoxified and treated for depression, as suggested by Dr. Goran. Instead, he felt that Dorr would become despondent and suicidal if she were taken off the morphine sulfate. Moreover, he stated that he would not attempt to undertake this type of treatment without the involvement of Dr. Cloyd.
Dr. Harper testified that the treatment he prescribes for Dorr is reasonable and necessary. He does not believe that he has violated any rules or regulations as a result of his treatment regimen and said that he has never been contacted by either the Louisiana State Board of Medical Examiners or the Louisiana State Board of Pharmacy concerning his treatment. Finally, he testified that Dorr’s treatment was not unusual, stating that a doctor specializing in pain management would use this same treatment regimen to treat a patient such as Dorr.
In his September 24, 1998 report, Dr. Harper states:
You had asked me to provide a current narrative report regarding Ms. Dorr’s current treatment program. I have been treating her chronic pains for many years. She has seen neurologists, neurosurgeons, orthopedists, physia-trists, psychiatrists, anesthesiologists, physical therapists, etc. with cure in spite of multiple surgeries. She has tried tranquilizers, counseling, relaxation training, exercise, TENS units, traction, trigger point therapy, acupuncture, massage, psychotherapy, biofeedback, vibrators, hypnosis, epidural steroids, etc. Medications at Inleast have included Margesie H, Vicodin ES, Lo-dine, Myoflex, Zostrix creme, Stadol, Halcion, Tylox, Talwin, MsContin, Phen-ergan, Nubain, Calan SR, Vistaril, Tho *373 razine, MSIR, Imitrex, Prednisone, Pax-il, Triavil, Pyridium, Decadron, Ambien, Maxzide, Zoloft, Amitriptylene, Lorcet %o, Ogen, Euthroid, Oramorph, Mexitil, Relafen, Ketoprofen Gel, etc. These in-elude multiple trials of the longlasting non-steroidal anti-inflammatories, antispasmodics, and antidepressants that Dr. Franklin recommends for her. He hopes to taper her from her MsContin although the potent opiates have been the only medicines she finds helpful for her chronic pain. I am an addictionologist myself and have done specific addiction evaluations of her, most recently on September 22, 1998. I diagnose that she is not an addict, but a bonafide well-documented, well evaluated chronic pain patient who is an appropriate, reason- • able and necessary program of pain including narcotic analgesics. We await improvements in the technology of pain management prior to changing her treatment regimen.
Dorr was treated by Dr. Cloyd from September 3, 1987 until his retirement in late 1996 or 1997. He diagnosed her as suffering from major depressive disorder characterized by sad prominent, persistent, moody disturbances with changes in interests, pessimistic attitude, and irritability, and chronic pain syndrome, which he felt played a major part in her depression. In his November 1994 deposition, Dr. Cloyd testified that he knew Dorr was being treated by Dr. Harper with morphine sulfate and he concurred in that treatment. He stated that there was medical literature which supported the thought that morphine was probably the safest and most effective analgesic known for treating constant severe pain. Although it can be addictive, he did not find this true with Dorr. Dr. Cloyd did not believe that she had misused, overused, or taken excessive amounts of the drugs prescribed to her.
Dr. Cloyd found Dorr distressed about going to Lake Charles for detoxification and the possibility of losing contact with Dr. Harper. He believed that this would have a definite negative effect upon her emotionally unless both he and Dr. Harper approved and supported this move. If Dorr were required to travel to Lake | ^Charles, he stated that her depression would probably intensify due to a feeling of being forced and harassed. Dr. Cloyd felt that there was a chance that she would commit suicide if she were taken off of her medication without being provided an acceptable alternative for dealing with pain. He agreed that a formal pain clinic program might be beneficial in helping Dorr deal with her pain.
Dr. Cloyd stated that he prescribed pain medication to Dorr once, when she was unable to get in touch with Dr. Harper, and that he attempted to place her on nonsteroidal, anti-inflammatory medications which she was unable to tolerate because of gastrointestinal side effects. Dr. Cloyd listed the medication he prescribed to Dorr up to the date of his deposition: Sinequan and Wellbutrin, antidepressants; Prosom, sleeping medication; Triavil 450, combination antidepressant and tranquilizer; Clonopin, Zoloft, a serotonin reuptake inhibitor for depression; Paxil, a nonsedating antidepressant; and Ambien, nonaddictive sleeping medication.
Dorr testified at the hearing that she had undergone five back surgeries prior to 1992. She stated that she chose Dr. Harper as her treating physician and that he prescribes morphine to control her pain. Dorr testified that she is taking four hundred milligrams of MS Contin every six hours, in addition to Triavil 450, an antidepressant. Dorr said she had taken non-steroidal anti-inflammatories for a long period of time, but they did not help her and caused her to become nauseated. She further indicated that she had taken muscle relaxants, antispasmodics, and other pain medication which neither helped nor controlled her pain. Dorr testified that only MS Contin controls her pain. She said that Dr. Harper took her off MSIR because MS Contin was working, and that her dosage for MS Contin had not in *374 creased in over a |isyear. Finally, Dorr stated that Dr. Harper performs a drug urinalysis on her every six months to determine if she is addicted to narcotics.
In her oral reasons, the workers’ compensation judge recounted Dorr’s past medical history and then stated:
The pharmaceutical records of Dr. Donald Harper indicate that since he has been treating Dorr, he has prescribed a volatile mixture of narcotic medications, anti-anxiety medications, antispasmodics, and anti-inflammatories. Together, these medications are contraindicated for combined use by a single patient.
In this case, the situation is made worse by the fact that while Dr. Harper was prescribing this regiment [sic] of medication for Dorr, she was also being prescribed the same and other medications by at least two other physicians. Dr. Harper believes the regiment [sic] of drug therapy is appropriate for Dorr, and Dr. Cloyd seems to concur.
In a report dated September 24, 1998, Dr. Harper opined that Dorr is not an addict, but a bonafide, well-documented, well-evaluated, chronic pain patient in need of an appropriate, reasonable, and necessary pain program, including narcotic analgesics. Dr. Blotner evaluated Dorr in November 1997. •
Dr. Harper’s best recommendation for Dorr, however, would be a chronic pain treatment facility. Contrary to Dr. Harper’s opinion, Dr. Blotner diagnosed narcotic abuse and. dependence, mood disorder due to narcotic dependence. Dr. Blotner opines that daily narcotic use serves to maintain and amplify pain over time.
It also serves to worsen the sleep disturbance, impair energy, impair concentration and memory, cause irritability, mood swings, depressed mood, anxiety, restless leg syndrome, muscle tension and spasm, and headaches, which Dr. Blotner says have all plagued Dorr. Dr. Blotner’s best recommendation for Dorr is medication management that will be most effective for physical pain, as well as emotional suffering or inpatient pain management like that proposed by Dr. Harper.
Dr. Kevin Gorin, a pain management, specialist, saw Dorr in January 1994. He does believe the use of ever increasing dosages of Morphine Sulfate is an appropriate — is an inappropriate and unreasonable treatment regiment [sic] for Dorr. The medical literature submitted by Dorr indicates that the drug regiment [sic] prescribed thus |14far for Dorr would be appropriate if she had no previous addictions to the medication.
However, the medical records are replete with diagnosis of addiction to narcotic medications and hospital admissions for the treatment of same. Based on the totality of the medication evidence submitted, the Court finds that the treatment currently being rendered to Dorr by Dr. Donald Harper is neither reasonable nor necessary.
Dr. Harper himself suggests that Dorr’s problems would best be addressed in a pain management program. This opinion is held by Dr. Blotner as well. The Court therefore believes that a comprehensive, inpatient pain management program would best serve to detoxify Dorr and treat her physical, as well as her mental condition.
After reviewing the record, wé find that the workers’ compensation judge erred in finding that Dr. Harper’s treatment of Dorr was not necessary. The workers’ compensation judge held that Dr. Harper had prescribed a “volatile mixture” of narcotic medications, antianxiety medications, antispasmodics, and antiinflammatories. She went on to hold that these medications were “contraindicated for combined use by a single patient.” We agree with Dorr that there is nothing in the record to support this finding. As Dorr points out, both Drs. Blotner and Franklin suggested treatment consisting of a combination of *375 drugs. Dr. Blotner suggested treatment through a combination of “so called ‘antidepressants,’ anticonvulsants, non-habit-forming muscle relaxers, and non-habit-forming analgesic medications.” Dr. Franklin recommended “longstanding non-steroidal antiinflammatories, antispasmodics, and antidepressants.” As further pointed out by Dorr, Dr. Harper responded to these suggestions by stating that Dorr’s treatment has already included “multiple trials of the longlasting non-steroidal anti-inflammatants, antispasmodics, and antidepressants” without success.
In addition, we agree that there is no evidence that Dr. Harper’s | ¡¿treatment was not necessary. Although the evidence shows that this type of treatment may be controversial, under the facts of this case we find that Dr. Harper’s treatment of Dorr with morphine sulfate was necessary. Dorr was originally injured in 1987. After undergoing several failed back surgeries, she was referred to Dr. Harper for treatment of chronic pain. Both Dorr and Dr. Harper stated that morphine sulfate was the only type of medication which provided any relief from her pain. As we stated above, an injured worker is entitled not only to treatment which will cure her ailment, but also to that which is palliative in nature. Brasseaux, 710 So.2d 340. Accordingly, Dr. Harper’s treatment is necessary as it provides pain relief to Dorr for her work-related injury. The judgment of the workers’ compensation judge finding Dr. Harper’s treatment of Dorr with morphine sulfate unnecessary is reversed. Judgment is rendered finding that such treatment is necessary under the facts of this case. Pursuant to our finding, we need not address Dorr’s second assignment of error concerning whether Jennings is responsible for any treatment by Dr. Harper.
PENALTIES AND ATTORNEY’S FEES
In her third assignment of error, Dorr argues that the workers’ compensation judge erred by refusing to award her penalties and attorney’s fees. She claims that the only difference between the issue at bar and the previous matter decided on appeal is the way the claim was drafted. However, she argues that they both had the same purpose: to compel her to submit to treatment by a physician of Jennings’ choosing. Dorr further claims that Jennings has again presented a judgment which was overly broad, in that it held Jennings was no longer responsible to approve or pay for Dr. Harper’s treatment.
lifiWe would like to point out that if Jennings did not agree with Dr. Harper’s treatment of Dorr, it had the opportunity to attempt other approaches at treatment but refused authorization to do so. On April 25, 1994, Dr. Harper admitted Dorr to the Lafayette General Hospital because she was feeling suicidal and had complained of persistent back and leg pain after falling the previous weekend. After noting her past treatment and that her level of pain had built up over the previous three months to a level of nine out of ten despite approximately six hundred and sixty milligrams of morphine a day, Dr. Harper had x-rays taken of her fusion and considered arranging various consultations with a variety of services. He further considered arranging for Dorr to undergo lumbar facet injections and referring her for a possible spinal cord stimulator or spinal cord opiate pump.
Dr. David Dawes, a psychiatrist and a colleague of Dr. Cloyd, evaluated Dorr and determined that she was suffering from a major depression related to her back pain, but was not suicidal. He informed Dr. Harper that he felt she was an excellent candidate for an implantable spinal opiate pump for pain relief and gave a psychiatric clearance for that procedure. Dorr was also seen by Dr. Robert White, a physical medicine and rehabilitation doctor, who also felt that she was a good candidate for an implantable intrathecal duromorphine pump and recommended an evaluation by Dr. Paul Hubbell, an anesthesiologist. *376 When Dr. Harper attempted to arrange the consultation, Risk Management, Inc., Jennings’ workers’ compensation insurer, refused authorization, and refused to pay for more than two days of hospitalization and any consultations outside of pain medication during Dorr’s hospital stay. When the x-rays revealed that Dorr’s fusion was still solid, Dr. Harper 117released her from the hospital against his wishes.
Dr. Harper testified that he wished to recommend Dorr to an anesthesiologist familiar with epidural steroid injections and/or facet joint blocks for further recommendation and treatment. He stated that if either of these relieved a major part of her pain, then repeat injections could be performed. If her pain consistently improved but kept returning, then Dr. Harper testified that a more permanent nerve block could be performed either by radio frequency lesioning technique or by injection of a neuroleptic block or cryosurgery. • If Dorr did not respond, Dr. Harper stated that the next step would be to try an electrical stimulator of the spinal cord or a spinal opiate infusion pump, as recommended by Drs. Dawes and White. Depending on Dorr’s response to this, or in place of that, Dr. Harper would recommend placing her in a referral chronic pain treatment facility geared to treating complex pain patients, handling all medication adjustments, and performing detoxification if necessary.
Thus, Jennings had the opportunity to attempt other treatment of Dorr’s chronic pain in 1994, but refused authorization for an evaluation by Dr. Hubbell and other consultations as requested by Dr. Harper. We further notice the insensitive attitude Risk Management and, thus, Jennings, has had in the past towards Dorr’s case, as evidenced by a September 20, 1995 letter to Dr. Harper:
Dear. Dr. Harper:
I have inherited Ms. Dorr’s claim. I have observed the behavior of Ms. Dorr over the last year, and find it necessary at this time to send you an inquiry. I have watched as Ms. Dorr lied about going out of town to get drugs early. I know she lied, as I checked several times she used this excuse, |isand she stayed home every day. I have tolerated the silly excuses such as needing drugs early because she threw up due to a virus. I laughed when she said she flushed her drugs down the toilet because of an argument with her husband. When I inherited the file, I decided to take the attitude that I will not battle you on this file, as it is pointless. Ms. Dorr has been declared permanently and totally disabled. We will be managing this filed for the rest of her life. Please indicate whether you have a plan for treatment, or should we expect a steadily escalating prescription bill for the rest of her life.
Please also explain why she was given a fourteen day supply on July 17th, and another fourteen day supply on July 24th. I have noticed that she is consistently getting prescriptions early. Will this practice persist?
Looking forward to a prompt response.
Sincerely,
Keith A. Smith
Claims Representative
Although Dr. Blotner has placed some of the blame on Dorr for her current condition, we think it should be noted that Jennings should also shoulder some of the blame. Had Jennings tried to work with Dr. Harper, a physician whom Dorr trusts, instead of trying to separate her from him, perhaps Dorr would have cooperated with other types of pain management more readily.
After reviewing the facts, we find that an award of penalties and attorney’s fees is appropriate in this instance. Instead of trying to work with Dorr, Jennings and its insurer have consistently and obstinately tried to force her to seek treatment from the doctor of their choice. Additionally, it alleges that the treatment she is receiving is unnecessary, yet it made no attempts to *377 try other treatments as recommended by Dr. Harper and several other doctors. As we said in the earlier appeal, “It is the right of the employee, not the employer, to select the physician for | ¡¡¡treatment of his disabling condition. ‘This is so because the trust and confidence needed in a patient-doctor relationship is important to successful treatment.’ ” City of Jennings Police Dep’t, at p. 3; 676 So.2d at 1129, quoting Williams v. Western Preferred Cas. Ins. Co., 465 So.2d 191 (La.App. 3 Cir.1985). Considering the foregoing, we find that Jennings’ and, especially, Risk Management’s actions with regard to Dorr were arbitrary and capricious. Accordingly, we reverse the workers’ compensation judge’s finding and render judgment awarding Dorr penalties equal to twelve percent of any unpaid medical payments and attorney’s fees of $10,000.00. La.R.S. 23:1201(E) and 1201.2.
CONCLUSION
For the foregoing reasons, the judgment of the workers’ compensation judge is reversed, and judgment is rendered in favor of the plaintiff, Jo Anna Dorr, finding that the treatment by Dr. Harper is necessary. Judgment is further rendered in favor of Dorr awarding her twelve percent penalties on any unpaid medical payments and $10,000.00 for attorney’s fees. The costs of this matter are assessed to the defendant-appellee, City of Jennings Police Department.
REVERSED AND RENDERED.
AMY, J., DISSENTS AND ASSIGNS REASONS.

. Dorr has a history of migraine headaches since the age of fifteen.

. Over the period of five years, the other medications prescribed were pain medications: Vicodin ES, Lorcet, Tylox, Nubain, Oramorph SR (morphine sulfate), and Mexi-til; antianxiety, antidepressant, and anticon-vulsant medications: Vistaril, Triavil, Paxil, Amitriptyline, Wellbutrin, Effexor, Tofranil, and Neurontin; mood disorder medication: Depakote; corticosteroid medication: Predni-sone; migraine medications: Calan and Imi-trex; antiinflammatory medication: Lodine; muscle relaxants: Zanaflix; vomiting and nausea medications: Reglan and Phenergan; diuretic medication: Maxzide; and sleep medication: Ambien.